No. 29,260.

THE SOUTHWEST SPECIALTIES COMPANY, *Appellant,*
v. H. W. EASTMAN, *Appellee.*

(286 Pac. 225.)

Opinion filed April 5, 1930.

*Robert R. Hasty, George Siefkin* and *George E. Hasty,* all of Wichita, for the appellant.

*E. L. Foulke, Roy H. Wasson* and *Eli Eubanks,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action for injunction. Defendant prevailed, and the plaintiff appeals.

The plaintiff sought to enjoin defendant from selling, disposing of, or otherwise disclosing or making known to the public or third parties, plaintiff's trade secrets, confidential information and a formula for the manufacture of penetrating oil, and from using the formula in the manufacture and sale of such oil.

Plaintiff alleged that it is a Kansas corporation and that its business is the manufacturing and marketing of penetrating oil; that the defendant, from the date of plaintiff's incorporation, February 8, 1928, was a stockholder in and also president of the company, until July 7, 1928; that he was also a member of the board of directors and head salesman; that on July 7, 1928, he resigned and disposed of his stock, severing all relations with the company; that by reason of having been with the company he had learned the details of the business of the company, the names of its customers, prices of its product, the manner of manufacture and sale of its product, and had been intrusted with knowledge of all the company's affairs, including the formula used in the manufacture of the penetrating oil; that plaintiff is the owner of the formula; that the manufacture and sale of this oil under the formula furnishes its main source of income, and that the maintenance of its secrets in business affairs is essential to its success; that since the severing of his relations with the company the defendant has violated the trust and confidence imposed in him by the plaintiff by offering and selling the formula to other persons, several of whom are named in the petition; that defendant has become associated with and interested in another company engaged in business in plaintiff's territory, and has disclosed the formula to it, and that this company is now engaged in manufacturing and selling penetrating oil in competition with the plaintiff; that by using its confidential information and secrets to create competition to plaintiff the defendant is caus-

ing irreparable injury and damage, and plaintiff therefore asked that defendant be enjoined.

The defendant in his answer denied that he had gained any knowledge whatsoever from the plaintiff; admitted his connection with the corporation; denied that plaintiff had any business secrets; that he ever used for himself or sold to others any information which he had obtained while in the employ of plaintiff; alleged that many years before he had discovered the formula, and that for more than five years prior to the inception of the plaintiff corporation he had manufactured and sold the oil in various states; that he had never given away or sold any exclusive right to manufacture the oil under the formula in question, but that on many occasions for money and friendship he had disclosed the formula to others, including the plaintiff; that in the beginning defendant informed the company how to make the penetrating oil, saying he would not sell the formula, but told the members of the company how to make it and that they could make it so long as they did not molest defendant in his personal rights. Defendant denied that he had sold plaintiff the exclusive right to the formula, and further claimed he had changed the formula from what it was when he was with the plaintiff by putting in other ingredients. Defendant also denied generally the allegations of plaintiff's petition.

Upon these issues the case was tried. Considerable evidence was taken. At the conclusion of the evidence the following record was made:

"COUNSEL FOR PLAINTIFF: The plaintiff rests. I don't know whether findings were requested.

"THE COURT: There isn't very much question about the material evidence. I don't think there is much call for findings.

"(Noon recess; argument of counsel.)

"THE COURT: The evidence in this case discloses that the defendant, associated with some other person, originated this formula some five or more years ago; that he manufactured the article in Chicago to a considerable extent, at least to the extent of manufacturing several thousand gallons and marketing them. He then went to Lincoln, Nebraska, and disclosed the formula to a company there, for whom he worked, and which manufactured the article and is still engaged in the manufacture of it; that he later associated himself with another person at Lincoln, Nebraska, and manufactured the article; having disclosed the formula to the Mosbacher Motor Company of Wichita, the Gridley Motor Company of Wichita and the Kansas Gas and Electric Company, in Wichita, all of which disclosures were made before the plaintiff corporation was organized and under circumstances which place

no duty upon any of the parties to keep the formula a secret and under circumstances which the court finds caused the formula to cease to be a secret formula. That at the time the formula was disclosed to the plaintiff in this action, the defendant had no right to be protected in the formula, and that the plaintiff had no greater right to protection than the defendant had. The plaintiff cannot claim to have been misled in the matter of the secrecy of the formula for the reason that the defendant was president of the company and having had the knowledge himself, it was the knowledge of the company that the formula had been disclosed to numerous parties under circumstances not requiring secrecy, and under that state of facts, I find that the injunction should not be granted.

"COUNSEL FOR PLAINTIFF: Will your honor make a finding upon whether or not there was an express or implied contract of a transfer to the corporation?

"THE COURT: Under the findings made, I think there could be no implied contract; the defendant himself having no right to the formula as a secret formula, there would be no implied contract that anyone else could have, and I find there was no express contract.

"COUNSEL FOR PLAINTIFF: I don't want to interrogate the court, but what I am trying to get at, Does your honor place his decision upon the grounds that this was not such a matter as could be contracted with or whether there was or not a contract?

"THE COURT: I find that there would be no implied contract not to use it, under the facts as I find them, and I find there was no express contract on the part of the defendant not to engage in a similar business or not to manufacture and sell a penetrating oil manufactured under this formula.

"COUNSEL FOR PLAINTIFF: It still doesn't get at my point; that is, whether or not, at the time he got the stock in the Southwest Specialties Company, he agreed to transfer to the Southwest Specialties Company this formula and whatever rights he had, if he had any.

"THE COURT: Well, I think the evidence doesn't show farther than that he permitted the Southwest Specialties Company to use the formula; in other words, that he disclosed the formula to the company.

"COUNSEL FOR PLAINTIFF: Which is equivalent to a finding your honor believes Eastman's testimony and not the other?

"THE COURT: Not necessarily.

"COUNSEL FOR PLAINTIFF: If your honor finds there was no contract at all to turn over to the Southwest Specialties Company, then we are done.

"THE COURT: If I knew what you meant by 'turning over'—

"COUNSEL FOR PLAINTIFF: By that I mean simply this: That it was his agreement that they were to have whatever rights he had in the formula, in payment of the stock that was issued to him.

"THE COURT: I will make that finding that, under the arrangement with the Southwest Specialties Company, they were to have whatever rights he had, which I think was nothing.

"COUNSEL FOR DEFENDANT: Would you make the additional finding that in forming the Southwest Specialties Company he, along with the other incorporators, put in an equal amount of capital?

"THE COURT: No. I would have to find, according to the evidence, that

there was $3,500 raised in some manner and that each of the three assumed responsibility for one-third of it.

"Counsel for Defendant: Has your honor made the finding that he did, at the time the Southwest Specialties Company was formed, turn into that company all of the right he had? At the time the Southwest Specialties Company was formed?

"The Court: The rights to manufacture under his formula.

"Counsel for Plaintiff: What other rights?

"The Court: That would be all the rights there would be.

"Counsel for Plaintiff: Does the court find Mr. Eastman had some additional rights?

"The Court: No. I find he didn't have any rights. I think when I find that he didn't have any secret formula, that he didn't have any rights.

"Counsel for Defendant: You say that you find Eastman turned over all of the rights to the Southwest Specialties Company at the time it was formed —all of his rights for making or manufacturing this oil. Do you mean by that his knowledge of making the oil, or did he turn over to them the knowledge of making of it?

"The Court: I find he turned over to them, so far as he could, the right to manufacture the oil according to the formula.

"Counsel for Plaintiff: Is the court's decision based upon the question of the right of secrecy to the formula?

"The Court: Yes."

Upon the foregoing findings of fact the court rendered judgment for the defendant. In doing so the trial court decided:

"(1) That the formula turned over to the plaintiff by the defendant was not a secret formula at that time; that it had been known to others for several years prior thereto and had been disclosed to numerous other parties prior to the incorporation of plaintiff.

"(2) That the defendant did not bind himself by any express contract not to engage in business in competition with the plaintiff and not to disclose the formula to others, and did not make any express contract granting the exclusive right to plaintiff to manufacture the penetrating oil according to the formula."

The appellant cites *Morrison v. Woodbury,* 105 Kan. 617, 185 Pac. 735. In that case the employee who had been in a position of trust and confidence thereby obtained his employer's books and from them copied a list of the expirations of fire insurance policies. The employer's business was that of writing insurance and his ownership of trade secrets and confidential information was clear and the employee was held guilty of gross wrong in attempting to so appropriate the list of policyholders—the property of his employer. Appellant also cites the case of *Vulcan Detinning Co. v. American Can Co.,* (N. J.) 12 L. R. A., n. s., 102. In that case it is pointed

out that the defendant company obtained its formula from a person who had been intrusted with it by the plaintiff for the express purpose of guarding it for the mutual benefit of himself and his associates. The injunction was allowed because this trustee of the complainant had violated his position of trust and confidence by disclosing the secret process of plaintiff's formula to the defendant. The party who made the disclosure was not the originator of the process, but was intrusted with the secret formula by his company. The injunction was based upon general equitable principles and was allowed because the court held it would be inequitable to permit defendant to profit as a result of information which had been disclosed by one who, being in a position of trust and confidence, had thereby violated such trust. In the case at bar the information used by the defendant and by him disclosed to others did not come to him as a result of being placed in a position of trust. It was not information gained from the plaintiff. It was information he had regardless of any association with plaintiff.

In *Garst v. Scott*, 114 Kan. 676, 220 Pac. 277, it was held:

"An employee who solicits business and delivers work for a laundry may, upon ceasing his employment, engage in a laundry business for himself, or become the employee of another laundryman, in competition with his former employers, and solicit business from their customers from whom he had received laundry work, where he leaves with the employers all lists of the customers, and where there is no contract prohibiting him from soliciting the patronage of such customers." (Syl.)

In the opinion, at page 679, the court said:

"A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer. Trade secrets are the property of the employer and cannot be taken or used by the employee for his own benefit, but customers are not trade secrets. They are not property. The right to trade with them may be property, but that right was not interfered with by the defendant. Written lists of customers may be property, but the defendant did not take any such list. Skill and knowledge acquired or information obtained cannot be left behind so long as those things exist within the mind of the employee. All that knowledge, skill and information, except trade secrets, become a part of his equipment for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information or education that was received by him before entering upon the employment. Those things cannot be taken from him, although he may forego them, forget them, or abandon them."

There was some evidence on the part of the plaintiff, also, that the defendant made false representations to the effect that the formula was secret at the time the company was formed, and that it was to be the exclusive property of the company; and further, that other stockholders of the corporation invested their money, relying upon such representations. However, the trial court did not make any finding to that effect. If it had, then the case of *Germo Mfg. Co. v. Combs*, 209 Mo. App. 651, would be a case in point. In that case it was held:

"Where partners, the owners of a formula for the manufacture of a poultry compound, upon organizing a corporation to take over the business of the partnership, put the formula into the corporation as a valuable trade secret for the greater part of its capital stock, treated it and guarded it as such, built up a business thereon and put the fact that it was a secret into the corporate records whereby they were enabled to dispose of their stock at a large price, the corporation and the subsequent stockholders were not charged with the duty or obligation of knowing that it was not a trade secret." (Syl. ¶ 3.)

In that case the formula had been used many years before and therefore, at the time the corporation acquired it, it was not a secret formula. In that respect the case last cited is similar to the one at bar, but in the case at bar the court did not make any finding from which it can be determined that at the time the formula was turned over to the corporation any representation was made, or any record was made, to the effect that it was a secret formula or that the corporation was to have the exclusive right to manufacture and sell the product under that formula. In the case at bar it must be noted that the defendant was the originator of the formula; that for several years prior to the time the plaintiff corporation came into existence the formula had been known to numerous other persons, some in Chicago, some in Lincoln, Neb., and others in Wichita, Kan. It is clear, therefore, that at the time the defendant dealt with the plaintiff the formula was no longer a secret one. It is equally apparent that the knowledge which defendant had of the formula was not gained by him through any position of confidence or trust while associated with the plaintiff. He had complete knowledge of the formula before becoming associated with the plaintiff company. He did not obtain this knowledge in any way from the plaintiff. He did not sell the exclusive right to the plaintiff to manufacture the product according to the formula. Neither did he expressly contract that he would not go into business in competition with the plaintiff. Where the formula had been previously disclosed and

was known to others, it necessarily follows that there could be no implied contract, under the facts as found by the court, that the defendant would not subsequently use the formula or engage in a business using the same. There being no implied contract not to use the formula, under the facts as found by the court, and no express contract on the part of defendant not to disclose the formula to others, or to engage in similar business, or not to manufacture and sell a similar product manufactured under the formula, it was proper for the court to refuse the injunction.

Under the findings of the lower court the judgment was correct. It is affirmed.