Argued January 7, affirmed as modified January 28, 1953

# McKINZIE ET AL. *v.* CLINE ET AL.

252 P. 2d 564

*O. C. Roehr* argued the cause for appellants. On the brief were Caldwell & Roehr, of Portland.

*Carlton R. Reiter* argued the cause for respondents. On the brief were Stern, Reiter & Day, of Portland, and Leon V. Olmstead, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, BRAND, TOOZE and PERRY, Justices.

LATOURETTE, C. J.

This is an appeal by defendants from a decree which, inter alia, restrains and enjoins defendants from manufacturing, selling or distributing the Cline 90° Gun Swivel and orders them to an accounting.

One of the plaintiffs, Preston McKinzie, invented a gun swivel known as the "McKinzie Quick Detachable Gun Sling Swivel", and thereupon filed his application with the patent office for a patent on such swivel. Preston McKinzie granted to Roland B. McKinzie and Everett K. McKinzie the sole and exclusive rights to distribute the aforementioned device which was a contrivance enabling one to attach a leather sling strap to the butt end and barrel of a gun, thus permitting

him to carry the gun by placing the sling strap over the shoulder. After the plaintiffs had perfected the swivel, they manufactured a number of them, whereupon they called on a Mr. Dayton, a machinist, for the purpose of having him manufacture the swivels for them. Mr. Dayton referred them to a Mr. Clark who was also a machinist and who occupied his building jointly with the defendants, who likewise were machinists. Mr. Clark, being unable to take care of the work for plaintiffs, introduced them to the defendants Cline. The plaintiffs had a model of the swivel intact and one broken down so that the working parts of the swivel could be seen and understood. Up to that time the defendants had never seen the innermost workings of a gun swivel and what knowledge they had of the same was obtained from an inspection of plaintiffs' swivel. The mechanism was rather intricate, consisting of three working parts, a base, the main body and the plunger. An arrangement was entered into between the parties whereby the defendants agreed to manufacture for plaintiffs the parts of the swivel in question.

It was necessary for defendants to procure certain tools for the manufacture of such parts, for which plaintiffs paid to defendants the cost thereof.

Defendants proceeded to the manufacture of the parts constituting plaintiffs' product, and upon the delivery of the same to the plaintiffs they assembled them into the finished product and put them on the market for sale. At the expiration of four months, trouble arose between the parties, whereupon defendants placed the swivel, with slight deviations, on the market for their own account under the name of the "Cline 90° Swivel". They thereupon applied for a patent for the product they were manufacturing, but at the time of the trial no patent had been issued to them. In connection with

the sale thereof, defendants indulged in national advertising of their product at a price under that charged by the plaintiffs for their swivel.

It is the plaintiffs' contention that their swivel was a trade secret, and, therefore, defendants, in the manufacturing of such swivel even with deviations, violated the trust and confidence reposed in them to the detriment and irreparable damage of plaintiffs.

Defendants argue that no confidential relationship was created by the agreement between the parties since defendants were independent contractors in the manufacture of the article, and, secondly, that plaintiffs' swivel was not a trade secret because it was sold to the public and generally known prior to the agreement between the parties.

The first question to be determined is whether or not a confidential or fiduciary relationship existed between the parties. The law books are replete with cases dealing with fiduciary relations between master and servant, but few have been called to our attention, nor have we been able to discover many which deal with a situation such as we have here. This, therefore, presents a novel case in Oregon.

We read in Restatement, Torts, 4, § 757, as follows:

"* * * The suggestion that one has a right to exclude others from the use of his trade secret because he has a right of property in the idea has been frequently advanced and rejected. The theory that has prevailed is that the protection is afforded only by a general duty of good faith and that the liability rests upon breach of this duty; that is, breach of contract, abuse of confidence or impropriety in the method of ascertaining the secret."

And further, on p. 8:

"One who has a trade secret may be harmed merely by the disclosure of his secret to others as

well as by the use of his secret in competition with him. A mere disclosure enhances the possibilities of adverse use. The persons to whom the disclosure is made may or may not be liable under Clause (c) for the subsequent use (see also § 758). Since a trade secret is vendible and since its sale value depends in part upon its secrecy, a mere disclosure may reduce the vendibility or sale value of the secret. The rule stated in this Section protects the interest in a trade secret against both disclosure and adverse use.

"The duties not to disclose and not to use another's trade secret are not, however, necessarily concomitant, though they are frequently found together. Thus, a former employe to whom the secret was communicated in the course of his employment may be under both duties (see Restatement of Agency, §§ 395 and 396.) On the other hand, a manufacturer who is permitted by the owner of the secret to use it in his manufacturing may be subject only to a duty not to disclose the secret to third persons. *Or the manufacturer may be permitted to use the secret only in the manufacture of products for the owner, with a duty not to disclose the secret or use it in the manufacture of products on his own account or for others.*" (Italics added).

The above principle is well stated in *Du Pont Powder Co. v. Masland,* 244 US 100, 102, 61 L ed 1016, 37 S Ct 575, wherein Mr. Justice Holmes said:

"* * * The word property as applied to trademarks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood

in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations.'' See *Board of Trade v. Christie Grain & Stock Co.*, 198 US 236, 49 L ed 1013, 25 S Ct 637.

In the case of *Consolidated Boiler Corp. v. Bogue Electric Co.*, 141 NJEq 550, 58 A2d 759, 769, the boiler company sought an injunction against and an accounting of profits from the defendant. It appears that the parties entered into a contract whereby the electric company was to manufacture for the boiler company certain domestic heating boilers which the boiler company had invented. An injunction suit was filed to restrain the electric company from manufacturing and selling like boilers to third parties. This law suit was settled and culminated in a written contract between them wherein the electric company covenanted that it would not manufacture, sell or deliver to any person other than to the boiler company the boilers in question. Trouble later arose between the parties, and the electric company sold to the other parties not only some of the boilers manufactured for the boiler company, but additional boilers of the same kind. Thereafter, another injunction suit was filed. The additional boilers sold by the electric company were basically the same as the boiler company's, with a few minor differences. One of the principal questions involved in the case was whether or not there existed a confidential relationship between the parties. It is true that there was a promise for secrecy and that there was a covenant not to manufacture for others, but the court said:

"* * * Even if the promise had not been given, the disclosure of it to the defendant was one in confidence and for the very limited purpose of having

the defendant manufacture the boiler for complainants alone. Bogue and its president were fiduciaries of that secret and were not free to disclose it or to utilize it for their own advantage. Bogue's covenant not to manufacture that boiler for others was merely declaratory of the legal disability that it was under, not to utilize for itself the trade secret of another, confidentially entrusted."

The court decreed an injunction and an accounting.

Hopkins on Trademarks (4th ed), 259, § 109, states:

"The principles under consideration extend beyond the relationship of master and servant. In fact, throughout all of this book that relates to equitable remedies we are but dealing with the application of those remedies which has been made upon specific forms of fraud. The cases analogous to trade secrets are many, and the language of Vice-Chancellor Turner in the leading case of Morrison v. Moat is applicable to all of them: 'Different grounds have been assigned by the exercise of the jurisdiction. In some cases it has been referred to property, in others to contract, and in others again, it has been treated as founded upon trust or confidence, meaning, as I conceive, that the court fastens the obligation on the conscience of the party, and enforces it against him in the same manner as it enforces against a party to whom a benefit is given, the obligation or performing a promise, on the faith of which the benefit has been conferred.' "

In the case of *Pidot v. Zenith Radio Corporation,* 308 Ill App 197, 31 NE2d 385, 393, the plaintiffs invented a novel design in connection with radio cabinets and sent their design and blueprint thereof to the defendant, a radio manufacturer, for the purpose of interesting the Zenith corporation in the purchase of the same. The corporation returned the sketches and blueprint to the plaintiffs with a letter stating that it was not interested in the use of the design. The corporation

later appropriated the design to itself, whereupon plaintiffs sued for an injunction and an accounting on the theory that a confidential relationship existed between the parties. The court upheld the plaintiffs' contention, saying:

> "* * * We agree with the contention of plaintiffs that the basis of recovery is breach of confidence and that it is not necessary for plaintiffs to establish that their design was new and novel as to the entire world. We also agree with the contention of plaintiffs that when they disclosed their design to the defendant a confidential relationship arose. It is apparent that insofar as the parties were concerned, plaintiffs' design was new and novel."

The facts in the instant case are much stronger in favor of a confidential relationship than are those in the Pidot case.

■ From the foregoing, it is clear that the inventor may be protected where there is a confidential obligation on the other party of good faith, and, further, that liability is predicated upon a breach of this duty; in other words, abuse of confidence is the gravamen of the offense.

■ We hold that the facts in the instant case constitute a confidential relationship between the parties.

It is next asserted that the swivel in question was not a trade secret because plaintiffs had manufactured it previously and had disclosed its mechanism to a great many people. The evidence shows that plaintiffs had manufactured the swivel in question for a short time and had placed it on the market in the hands of retailers for sale and had discussed its manufacture with several machinists; but there is no evidence in the record that anyone other than defendant Cline and the plaintiffs had any knowledge of the inside work-

ings of the gadget. But, even though others might know or become acquainted with the manufacturing process of an article such as we have in this case, would that permit the defendants to violate the confidence reposed in them by plaintiffs to their own enrichment and to the detriment of plaintiffs?

Reverting to Restatement, supra, at p. 7, we read:

"Although given information is not a trade secret, one who receives the information in a confidential relation or discovers it by improper means may be under some duty not to disclose or use that information. Because of the confidential relation or the impropriety of the means of discovery, he may be compelled to go to other sources for the information."

In the case of *Shellmar Products Co. v. Allen-Qualley Co.,* 87 F2d 104, a manufacturer was enjoined from manufacturing a certain type of wrap for candy bars because of its bad faith in breaching the confidence which had been placed in it, notwithstanding the disclosure of the secret to others.

In the *Consolidated Boiler Corporation* case, supra, since the boiler was patented, and, since a number of them were on the market, any boiler mechanic could have torn them down to discover how they were made and later manufactured them. Despite this, the court held that there was a breach of faith on the part of the electric company in manufacturing the boilers for their own account.

We quote from *Vulcan Detinning Co. v. American Can Co.,* 72 NJEq 387, 67 A 339, 343, as follows:

"Looking, now, a little more closely at the nature of the relief called for by the complainant's case, which we are now enabled to do in the light of the issues that have been actually tried, we shall

see, I think, that too much emphasis has perhaps been placed upon the element of absolute secrecy in the process, and that not enough stress has been laid upon the inequitable character of the defendants' conduct in making a use of such process that was inimical to the complainant's interests. What I wish to point out is that the real gravamen of the complainant's bill, as amplified by the proofs, is not that the defendants are threatening to destroy the value of an absolutely secret process by imparting it to the public, but that the defendants, while keeping the secret of the process to themselves, are making a use of it that is inequitable as to the complainants. [Sic] In fine, the main and immediate need of the complainant, as shown by the testimony, is to be protected from the inequitable competition to which it has been exposed by a breach of confidence.

Defendants cite the following cases: *Boucher v. Wissman*, 206 SW2d 101; *Schavoir v. American Rebonded Leather Co.*, 104 Conn 472, 133 A 582; *Southwest Specialties Co. v. Eastman*, 130 Kan 433, 286 P 225; *Carver v. Harr*, 132 NJEq 207, 27 A2d 895; and *Victor Chemical Works v. Iliff*, 299 Ill 532, 132 NE 806, 810.

The Boucher case is of no aid to them since, there, the manufacturer "was in nowise his [the inventor's] employee or had any contractual relation with him."

The Schavoir case lends support to the plaintiffs', rather than to the defendants' position in that it quotes with approval from the opinion of Mr. Justice Holmes in *Du Pont Powder Co. v. Masland*, supra.

From the Southwest Specialties Co. case it appears that the defendant, who was charged with illegally manufacturing plaintiffs' formula, was himself the originator of the formula long before he became associated with the plaintiff company.

In the Carver case the defendant, while working for a corporation in which the plaintiff had some interest, learned of the design of a certain black-out screen invented by plaintiff, who sought to enjoin him (defendant) from marketing or selling such screens. The court held that there was no confidential relationship between the parties since the corporation for which plaintiff was working had nothing to do with the making of the screens.

The facts in Victor Chemical Works case are not at all similar to the facts in the present case. The decision there turned on several points; however, the court said:

> "The claim of plaintiff that the use of unslaked lime as a reagent was discovered by it and was unknown and unused as a reageant by other manufacturers and chemists is overwhelmingly disproved by the weight of the evidence in this case."

In the present case, plaintiffs in good faith employed defendants to manufacture certain intricate parts constituting their swivel. At this point defendants had never engaged in such a practice, had never seen the inside workings of a gun swivel, and the subject of the agreement between them was entirely foreign to their thinking. Plaintiffs laid out the fruits of their invention in order that both should prosper and profit by the undertaking. According to the plaintiffs, the defendants were to be paid for their work when the swivel was placed on the market, sold, and the process of the sales received by the plaintiffs. The evidence shows, and it is not denied by the defendants, that about 50 per cent of the plungers manufactured by defendants were defective and had to be scrapped. Plaintiffs, without a denial on the part of the defendants, testified that they endeavored to have defendants correct the

imperfections but to no avail. At the expiration of the four months, defendants sued plaintiffs for moneys they claimed due from plaintiffs by reason of the work they had done. That case was pending at the time the present suit was brought. Thereupon defendants applied for a patent to the swivel which they were about to manufacture. The parts of the swivel which defendants had on hand and which had been manufactured for plaintiffs' benefit were used in the swivel which defendants were putting on the market, and they began manufacturing the Cline swivel, using the tools they had theretofore purchased with plaintiffs' money.

It is obvious from the record that as soon as defendants found that plaintiffs' swivel was marketable and profitable they brought about a rupture between the parties for their own aggrandizement. This is fortified by the following unrefuted testimony of a Mr. Michaels who had been employed previously by defendants to sell the Cline swivel:

"A Well, he [Cline] just called them 'Hillbillies', that's all. He said he would run the 'Hillbillies' out of the business. He had the merchandise, he said, he could manufacture them. He had the machines to manufacture them."

■ If our system of private enterprise on which our nation has thrived, prospered and grown great is to survive, fair dealing, honesty and good faith between contracting parties must be zealously maintained; therefore, if one who has learned of another's invention through contractual relationship, such as in the present case, takes unconscionable and inequitable advantage of the other to his own enrichment and at the expense of the latter, a court of equity will extend its broad equitable powers to protect the party injured. This is

in consonance with the rule enunciated in *Consolidated Boiler Corp. v. Bogue Electric Co.*, supra, and *Pidot v. Zenith Radio Corporation*, supra, which, in our opinion, are premised on logic and clear reasoning.

■ Defendants' answer pleads in effect that, since plaintiffs breached the contract between the parties and owed defendants $794 for the services defendants performed for plaintiffs, plaintiffs in effect do not come into court with clean hands. To this plea, plaintiffs by their reply plead an abatement on the grounds that an action was pending in another court involving the $794 due and owing defendants. It appears that the court took no cognizance of the matter as it decided the case on the merits. Defendants in their brief made no mention of this feature of the case but did urge it orally on appeal. Defendants' contention is without merit.

The decree went too far in ordering defendants to surrender to plaintiffs ''all copies of dimensions, plans, specifications, tools, dies and devices belonging to plaintiffs'', as the evidence does not show that plaintiffs ever delivered to defendants those things; so, of course, defendants cannot comply with such order.

The decree will be affirmed with the above modification.