Argued September 6, affirmed October 12, petition for
rehearing denied November 9, 1960

# STIMSON LUMBER COMPANY *v.* LAURENCE-DAVID, INC., ET AL

356 P. 2d 84

*J. Pierre Kolisch,* Portland, argued the cause for appellant. On the briefs were Ramsey and Kolisch, Portland.

*Hugh Barzee* and *Moe M. Tonkon,* Portland, argued the cause for respondents. On the briefs were Barzee, Leedy & Lind and with Moe M. Tonkon was Philip A. Levin, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is an appeal from a decree of the circuit court of Multnomah county denying the plaintiff's claim for injunction and damages for alleged infringement on and use of trade secrets and formula for making plastic wood used in the plywood industry.

The plaintiff in 1939 employed a chemist named Luback for the purpose of developing a wood plastic material which could be used for patching and repairing cracks, worm holes and other defects in plywood and other lumber products.

After considerable research, experimenting and testing, Mr. Luback developed and constantly improved such a wood plastic for the plaintiff. Mr. Luback retired in 1949 and the plaintiff employed the defendant James Laurence Gilkey as superintendent of its plastic wood plant. Mr. Gilkey had practically no previous experience with wood plastic. The record is silent as to what, if any, training or experience he had as a chemist.

At the time of Mr. Gilkey's employment the plaintiff had a certain unpatented formula which it used in making a commercial wood plastic for the plywood industry, and it had built up quite a large trade or business with the various plywood and lumber firms of the West.

The plaintiff had always kept its formula, data and manufacturing technique secret, and this secrecy was known to Mr. Gilkey at the time of his employment and he was enjoined to, and claimed that he did,

maintain and still maintains that secrecy regarding plaintiff's formula and the data relating to it.

When Gilkey was employed in 1949, he signed an agreement in the form of a letter with his employer, the pertinent parts of which are as follows:

"In consideration of the monies paid and to be paid to you during the term of your employment by this company, it is understood and agreed by and between us that all new and possibly patentable matter conceived or developed by you during the said period of your employment by the Stimson Lumber Company, pertaining directly or indirectly to the business of the company, or to duties performed within your employment, is to be the property of the Stimson Lumber Company, and that you have agreed and do hereby agree to execute any patent application or applications requested by the company covering any such conception or development, and to assign to the company all applications and patent rights covering any such conception or development. It is further understood that any expense pertaining to such patent applications is to be borne by the Simson [sic] Lumber Company.

"It is further understood as a necessary result of the foregoing, that any and all such conceptions and developments are to be considered and kept as secret, except when specifically released from secrecy by the company or its duly designated officials."

■ This agreement mentions only that new and possibly patentable matter conceived or developed by Mr. Gilkey during his employment shall become the property of the Stimson Lumber Company. It is not a noncompetitive agreement and does not prevent Gilkey's employment by others or his going into business for himself.

This employer-employee relationship continued between the plaintiff and the defendant Gilkey until June 30, 1958, when, after due notice, Mr. Gilkey terminated his employment.

During the latter part of defendant Gilkey's employment with the plaintiff, he negotiated and arranged with the defendants Paul David Loepp and Urban R. Banfield to join him in the production of a new commercial wood plastic, and they took over equal shares in Laurence-David, Inc., a newly incorporated company, to be used as their plastic wood manufacturing company.

On July 1, 1958, Mr. Gilkey and Laurence-David, Inc., signed an agreement with the Great Western Chemical Co. of Oregon, whereby it was agreed that Great Western Co. should be the sole distributor of most of the Laurence-David, Inc., plastic wood products in Canada, Alaska, and the states west of the Mississippi river. Great Western Chemical Co. of Eugene is a subsidiary of Great Western Chemical Co. of Oregon.

In conformity with this agreement, Laurence-David, Inc., proceeded to manufacture plastic wood products called "Chem-wood." This name was registered by Great Western Co. of Oregon. The first product was placed on the market in the later part of July or first part of August, 1958. This first product was not acceptable to the plywood industry and was practically all returned, and other improvements were made in it before it was accepted.

The principal question to be determined in this case is: Did the defendant James Laurence Gilkey appropriate plaintiff's trade secrets to his own use during his employment by them or after his retirement from plaintiff's employment?

We believe that all the pertinent issues raised by the plaintiff and the defendants can be resolved by the determination of this one question, except for the question of pleading raised by the defendants, which will be mentioned later.

There is no doubt that a confidential relationship existed between the plaintiff and Mr. Gilkey as its employee. This is borne out by the above-mentioned agreement between the parties, and also by the testimony of Mr. Miller of the plaintiff corporation and by the testimony of Mr. Gilkey himself, and admitted by the defendants in their briefs and on argument in this court. Of course, the vital question in that regard would be how far did that confidential relationship extend, and of what did it consist?

2. Oregon has adopted the rule that recovery for infringement on or violation of a trade secret, if any, is based upon a violation of a confidential relationship and breach of trust, rather than the theory that the plaintiff might have a property right in the trade secret. *McKinzie et al. v. Cline et al.*, 197 Or 184, 252 P2d 564.

This also seems to be the general rule as applied to violation of trade secrets; that it should be based upon the violation of a breach of faith rather than a claim of property right; that abuse of confidence is the real gist of the claim.

In *Du Pont Powder Co. v. Masland*, 244 US 100, 61 L ed 1016, 37 S Ct 575, Mr. Justice Holmes uses these words:

"* * * The word 'property' as applied to trademarks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the

plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied, but the confidence cannot be. Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. * * * and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations."

In the present case there is not sufficient proof that the defendant Gilkey violated the confidential relationship during the many years of his employment by the plaintiff. It is true there were some suspicious circumstances and some proof offered, but we believe, as the trial court apparently did, that Gilkey was a faithful employee of the plaintiff; that when he terminated that employment, he did not take with him any notes, data, production formulas or secret production methods of the plaintiff, other than the general knowledge which he possessed before the hiring and that received in connection with the employment. This he had a right to do.

He had not made a noncompetitive agreement with the plaintiff and was entitled to use any skill and general knowledge acquired in plaintiff's employ or otherwise, even though it was used in competition with the plaintiff, so long as trade secrets were not used nor revealed. *W. H. Gossard Co. v. Crosby,* 132 Iowa 155, 109 NW 483; *By-Buk Company v. Printed Cellophane Tape Company,* 163 Cal App2d 157, 329 P2d 147; Mechem on Agency (2d ed) 887, § 1212; Callmann, Unfair Competition and Trade-Marks (2d ed) 824, § 55.2(a); 35 Am Jur 525, Master and Servant, § 97.

■ The trial court found that the formulas for making plastic wood as used by both the plaintiff and the defendants were products having common and similar ingredients, are well known and are in fact in the public domain. There can be no doubt from the evidence that the basic ingredients, materials and processes in making plastic wood are well known and available to the public. There were received in evidence direct copies of pages from books in the public library of Multnomah county, Oregon, which give at least seven formulas for making plastic wood. They are all similar and basically the same. Testimony of the two expert chemists, Mr. Playfair and Mr. Kellogg, was to the effect that basic ingredients of all the wood plastics on the market so far as they knew were basically the same and very similar to the formulas in general publications. To that extent, at least, they are surely in the public domain. *Sandlin v. Johnson,* 141 F2d 660; 1 Nims, Unfair Competition and Trade-Marks, 402-403, § 141.

The main differences in the wood plastics on the market, including the plaintiff's and the defendants', seem to be the materials added to the basic formulas.

■ In this case, even if the formula used by the plaintiff were commonly known and could be used by others, that would not justify its use by the defendant if he confidentially acquired the information.

This court in *McKinzie et al. v. Cline et al.,* supra, said:

"* * * But, even though others might know or become acquainted with the manufacturing process of an article such as we have in this case, would that permit the defendants to violate the confidence reposed in them by plaintiffs to their own enrichment and to the detriment of plaintiffs?

"Reverting to Restatement, supra, at p. 7, we read:

> " 'Although given information is not a trade secret, one who receives the information in a confidential relation or discovers it by improper means may be under some duty not to disclose or use that information. Because of the confidential relation or the impropriety of the means of discovery, he may be compelled to go to other sources for the information.' "

See also *Franke v. Wiltschek* (2d Cir., 1953), 209 F2d 493; *Extrin Foods, Inc. v. Leighton* (N.Y. Sup. Ct. 1952), 115 NYS2d 429.

The plaintiff has the burden of proving that the defendant Gilkey used its formula and its trade secrets in making the "Chem-wood" product. It has attempted to do this by the testimony of its witness Prof. Joseph Schulein, an expert chemical engineer and an instructor in chemical engineering at Oregon State College for 17 years. He testified that plaintiff's and defendants' plastic woods were more than quite similar. He had the benefit of a formula provided by plaintiff to him and purchased a can of "Chem-wood", made his own analysis of it, and then compared the two.

Neither the formula of the plaintiff nor that of the defendants was introduced in evidence so that the court could compare the specific amounts of each and every ingredient used in each formula, and thus with the testimony and help of the experts, determine the basic similarities or the differences.

Plaintiff failed to offer its formula, although it asked that Mr. Gilkey submit his formula to it. The plaintiff gave not wanting to divulge its trade secrets as its reason. It could have produced its formula and trade secrets to the court with the public excluded

and without making a public record under the in camera rule, with which the transcript shows it was familiar. It did not choose to do so and relied almost entirely on the testimony of Prof. Schulein, as above mentioned.

The defendants' testimony showed that there were specific differences and that the similarities were the same similarities that existed between all the formulas used in the industry and as cited in the library books. The testimony reveals that none of the experts for either party made complete and thorough analysis of all the ingredients of both plaintiff's and defendants' formulas.

We believe that the plaintiff has failed to prove the principal question in this case. The evidence does not bear out the claim that Mr. Gilkey appropriated the plaintiff's trade secrets to his own use during his employment by them or after his retirement from its services. It appears that he used only the general knowledge acquired in assisting him in formulating "Chem-wood" and related products.

The plaintiff has failed to prove any conspiracy of any kind between the defendants to secure plaintiff's formula.

It will be unnecessary to decide the question of pleading raised by the defendants by reason of our holding on the merits.

The judgment is affirmed.