Argued July 3, affirmed September 19, 1962

# KAMIN *v.* KUHNAU ET AL
### 374 P. 2d 912

*William A. Babcock* and *William W. McGeorge,* Portland, argued the cause and submitted briefs for appellant.

*Robert A. Leedy,* Portland, argued the cause for respondent. On the brief were Barzee, Leedy & Tassock.

Before McALLISTER, Chief Justice, and WARNER, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

This is a suit in equity to enjoin defendants from unfairly competing with plaintiff and to recover damages resulting from such competition. Defendants appeal from a decree permanently enjoining them from engaging in unfair competition with plaintiff and from an award of damages in the amount of $19,272.48.

Plaintiff alleges that he employed defendant, Richard Kuhnau, as an independent contractor to furnish labor and materials required in the construction of garbage truck bodies embodying improvements invented by plaintiff. It is alleged that plaintiff perfected a so-called "packer" garbage truck body involving the use of a "plow" which is a power-operated device for compressing materials placed in the truck body and thereby increasing its capacity. It is asserted that these improvements were trade secrets communicated to defendant Kuhnau in the course of a confidential relationship, giving rise to a duty not to disclose or appropriate such secrets for defendant's own benefit. Plaintiff charges that defendant, in violation of this duty, manufactured packer truck bodies for his own account, sold them, and offered them for sale in competition with plaintiff.

Defendants interposed a general denial and affirmatively alleged, in effect, that the principle involved in their construction of garbage truck bodies

had been in the public domain prior to plaintiff's experimentation. They also alleged that the truck bodies manufactured by defendants are different from plaintiff's product in that the former embody only the improvements invented by defendants.

The facts are as follows. For approximately 25 years plaintiff had been employed by a knitting mill as a mechanic. In 1953 he entered into the garbage collection business. From the time plaintiff entered into the garbage collection business he began thinking of methods of facilitating the loading of garbage trucks and of compressing or packing the materials after they were loaded. By 1955 he had done some experimental work on his own truck, devising a hoist mechanism operated by hydraulic cylinders to lift a bucket from the ground to the top of the truck box. By this time he had also arrived at the conclusion that the packing of the loaded materials could best be effected through the use of a hydraulically operated plow which would move against the loaded materials and compress them against the interior of the truck. At the time plaintiff conceived this solution there were on the market garbage truck bodies containing various "packer" mechanisms, including hydraulically operated plows. However, plaintiff and defendant apparently were not aware of the use of hydraulic cylinders for this purpose and thought that plaintiff's idea was novel in this respect.

In January, 1955, plaintiff made arrangements with defendant Kuhnau, president and manager of Oregon Rental Equipment Company, to use the company's machine shop and one or more of its employees to assist plaintiff in carrying on further experimental work in developing plaintiff's ideas. This experimental work was carried on for approximately one

year. According to plaintiff's evidence, all of the experimental work was done under his supervision and Kuhnau had no voice or control as to the manner in which the developmental work was to be carried on. It is Kuhnau's contention that he and the employees of Oregon Rental Equipment Company contributed suggestions and ideas which were used in the development and improvement of the truck body and compressor mechanism.

In the course of working on the project several persons who were engaged in the garbage collection business came to the defendant's machine shop, observed the progress being made by plaintiff and made suggestions as to the practical application of plaintiff's idea. Sometime in the summer of 1956 the truck and compressor mechanism which plaintiff was seeking to develop was crystallized substantially in the form in which it now exists.

When plaintiff had completed his experimental work he began to receive orders for truck bodies embodying his improvements. The first two units sold were manufactured by Oregon Rental Equipment Company. After the sale of these two units (in the spring of 1956) Kuhnau terminated his connections with Oregon Rental Equipment Company. He rented a machine shop at another location and began business under the name of R. K. Truck Sales. Between May and October, 1956, he manufactured ten units for plaintiff. For each unit Kuhnau received an amount agreed upon by the parties. Plaintiff fixed the selling price of the unit and his profit consisted of the difference between the selling price and the amount he paid Kuhnau.

On or about October 1, 1956, Kuhnau informed plaintiff that he was going to manufacture truck bodies in competition with plaintiff. Kuhnau testified that

the relationship was terminated as a result of a disagreement over the amount he was to receive for manufacturing the unit for plaintiff. Plaintiff contends that Kuhnau terminated the relationship for the purpose of entering into competition with plaintiff. The units manufactured by Kuhnau were similar to those which he had previously manufactured for plaintiff. However, there were some differences in the design of the two units. The principal difference was that Kuhnau mounted the hydraulic cylinder operating the plow or blade under the truck bed whereas the cylinder in plaintiff's truck was above the bed. There was testimony supporting plaintiff's assertion that it was his idea to place the cylinder under the bed of the truck but that suggestion was not adopted because Kuhnau did not think it was feasible.

The trial judge inspected the competing devices at the conclusion of the testimony. The trial court concluded that the agreement entered into between plaintiff and Kuhnau for the manufacture of the truck bodies established a confidential relationship between the parties and that this relationship imposed upon Kuhnau the duty not to use the information disclosed to him by plaintiff for his own benefit.

The principal contentions advanced by defendants on appeal are (1) that the evidence does not show that the disclosure made to Kuhnau was a trade secret, (2) that even if the information were a trade secret originally, it ceased to be one after public disclosure by sale and patent, and (3) that a confidential relationship did not exist between the parties.

In support of the first point defendants introduced evidence to show that at the time the arrangement for the manufacture of the units was entered into there were on the market various types of compressor de-

vices designed to pack loaded garbage. Among these units was one which employed a hydraulic cylinder for the movement of the plow or blade. It appears, however, that at the time in question these units were not in common use in Portland and the surrounding area. The evidence indicates that plaintiff proceeded with his experimentation in the belief that he was developing a novel method of compressing loaded materials. It further appears that although plaintiff did not first conceive the basic idea of a packer body employing a hydraulic cylinder, he was granted a patent on a packer unit involving the hydraulic principle. Thus there was a claim to novelty of some sort, although the evidence does not clearly show in what particulars the claimed improvements over the prior art had been copied by defendants in the construction of their truck bodies. The initial question is whether the disclosure to defendant Kuhnau of plaintiff's design for a garbage packer unit was made under such circumstances as to raise an implication of a promise by Kuhnau not to appropriate the design to his own use.

Obviously, no such implication could be made if Kuhnau had been employed simply to recreate a packer unit already on the market in the locality and commonly known to the trade.[1] But this was not the case. It was established that garbage truck bodies of the type made by plaintiff had not been on the local market. Supporting the testimony to this effect was the fact that other garbage collectors in the vicinity exhibited great interest in plaintiff's project to de-

---

[1] Lueddecke v. Chevrolet Motor Co., 70 F2d 345 (8th Cir 1934); Smoley v. New Jersey Zinc Co., 24 F Supp 294 (D C NJ 1938); Russell v. Wall Wire Products Co., 346 Mich 581, 78 NW2d 149 (1956); Boucher v. Wissman, 206 SW2d 101 (Tex Civ App 1947). See, Flanigan v. Ditto, Inc., 84 F2d 490, 495 (7th Cir 1936); Southwest Specialties Co. v. Eastman, 130 Kan 443, 286 P 225 (1930).

velop what he thought was a new idea for packing garbage. Further support is found in the fact that there was a ready sale market for the trucks manufactured by plaintiff and by defendants. There was also evidence to support plaintiff's contention that he had made improvements in the mechanism of the packer of sufficient substantiality as to make his trucks preferable to others on the market. As we have already pointed out, there was issued to plaintiff a patent covering certain features of the garbage truck packer unit. Although the issuance of the patent does not conclusively establish the claim of novelty over the prior art, it will support the claim to novelty unless defendants can rebut this presumption by adequate evidence to the contrary.[2] However, to make out a case of unfair competition plaintiff is not required to establish novelty requisite to patentability.[3] The novelty

---

[2] Radio Corporation of America v. Radio Engineering Lab., 293 US 1, 54 S Ct 752, 55 S Ct 928, 78 L Ed 1453, 79 L Ed 163 (1934). In Mumm v. Decker & Sons, 301 US 168, 171, 57 S Ct 675, 81 L Ed 983 (1937) the court said, quoting from Cantrell v. Wallick, 117 US 689, 695, 696:

"* * * 'For the grant of letters patent is *prima facie* evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. [Citing cases].' * * * Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that 'every reasonable doubt should be resolved against him.' *Id.*, *Cantrell v. Wallick, supra* * * *."

See also, Patterson-Ballagh Corp. v. Moss, 201 F2d 403, 406 (9th Cir 1953), where the court said:

"* * * The presumption created by the action of the Patent Office is the result of the expertness of an administrative body acting within its specific field and can be overcome only by clear and convincing proof."

[3] A. O. Smith Corporation v. Petroleum Iron Works Co., 73 F2d 531, 538 (6th Cir 1934); Shellmar Products Co. v. Allen-Qualley Co., 36 F2d 623 (7th Cir 1930); International Industries v. Warren Petroleum Corp., 99 F Supp 907, 914 (D C Del 1951); Russell v. Wall Wire Products Co., supra.

may consist of no more than "mechanical improvements that a good mechanic can make." Restatement, Torts § 757, comment b (1939).④ Essentially, the question is whether the idea which is disclosed has such value that it may reasonably be implied that the disclosee is not privileged to use it for his own profit. The fact that the idea was already developed by others at the time of disclosure may make it less valuable in the market. Yet the information or knowledge may give to the possessor a commercial advantage over his competitors. This advantage constitutes value, and the disclosure of the information which creates the advantage may be sufficient to raise the implied agreement not to appropriate it. This principle is expressed in the cases. For example, in *Schreyer v. Casco Products Corp.*, 97 F Supp 159, 168 (D C Conn 1951), the court said:

"* * * It is true that matters which are completely disclosed by goods on the market are not trade secrets. Mycalex Corp. v. Pemco Corp., D.C. Md. 1946, 64 F. Supp. 420. Relying on this proposition, the defendants contend that all the information revealed by the blueprints and blanks could have been ascertained by careful analysis of the Steam-O-Matic iron which was obtainable on the market. By measuring the component parts, they say, blueprints could have been prepared and the most efficient productive method deduced. The fact remains, however, that the defendants took unwarranted advantage of the confidence which the Schreyers reposed in them and obtained the desired

---

④ *Accord,* Fairchild Engine & Airplane Corp. v. Cox, 50 NYS2d 643 at 656 (Sup Ct 1944); Bloomfield v. Tabor, 316 SW2d 115 (Tex Civ App 1958). See, Tower Mfg. Co., Inc. v. Monsanto Chemical Works, 20 F2d 386 (D C S D NY 1927); Schavoir v. American Re-Bonded Leather Co., 104 Conn 472, 133 A 582 (1926); Stone v. Grasselli Chemical Co., 65 NJ Eq 756, 55 A 736, 103 Am St 794 (1903); Tabor v. Hoffman, 118 NY 30, 23 NE 12 (1889).

knowledge without the expenditure of money, effort and ingenuity which the experimental analysis of the model on the market would have required. Such an advantage obtained through breach of confidence is morally reprehensible and a proper subject for legal redress. See A. O. Smith Corp. v. Petroleum Iron Works Co., 6th Cir., 1934, 73 F2d 531."

Defendants argue that plaintiff had disclosed his alleged improvements in design by advertising and by the sale of the trucks to others, and that the defendants or anyone else could ascertain from those sources the nature of the alleged improvements. The fact that the design and process of manufacturing a truck body similar to plaintiff's could have been ascertained from these sources does not foreclose plaintiff from a remedy for unfair competition. As the court in *Franke v. Wiltschek,* 209 F2d 493, 495 (2d Cir 1953) pointed out, the real question is not whether the disclosee *could have* obtained the disclosed information elsewhere, but rather whether in fact he *did* so obtain it.[6]

This principle was applied in *Smith v. Dravo Corp.,* 203 F2d 369 (7th Cir 1953). In that case plaintiff disclosed the design for steel freight containers to defendant, a prospective purchaser of plaintiff's business. Thereafter, defendant began to manufacture and sell a container of similar design. The defense was that the design of the car was ascertainable from the containers which plaintiff had already sold. At the

---

[6] "* * * It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment. * * * [Citing cases]." 209 F2d 493 at 495 (2d Cir 1953).

time of the disclosure to the defendant, 100 of the containers manufactured by plaintiff were in public use. The court held that the information as to plaintiff's design acquired by defendant was, nevertheless, not subject to appropriation by defendant. The court said, at p. 375, that "the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis."[6] It has been held that defendant may not appropriate the disclosed information even where resort to it "was more of a convenience than a necessity." *Tabor v. Hoffman,* 118 NY 30, 37, 23 NE 12, 13 (1889).

It must be admitted that there are cases which do not go so far as *Smith v. Dravo,* supra, in stating or applying the principle of unfair competition where the information disclosed is available elsewhere.[7] However, we favor the principle expressed in *Smith v. Dravo,* which provides a more extended protection to the person disclosing information in confidence. The choice of these views will be governed by one's opinion as to the appropriate standard of commercial morality. The cases reflect the varying views as to where the standard should be set. It has been noted that the "tendency of the law, both legislative and common, has been in the direction of enforcing increasingly higher standards of fairness or commercial morality

---

[6] The court, after noting that the containers could be seen on the docks where they were stacked, said:

"* * * However, in view of their limited number * * * this was far from an every day occurrence. Furthermore, the details of their construction could not be ascertained by casual, distant appraisal * * *." Smith v. Dravo Corp., 203 F2d 369, 371 (7th Cir 1953).

[7] See, e.g., Northrup v. Reish, 200 F2d 924 (7th Cir 1953); Sandlin v. Johnson, 152 F2d 8 (8th Cir 1945); Speciner v. Reynolds Metals Company, 177 F Supp 291 (S D NY 1959); Carver v. Harr, 132 NJ Eq 207, 27 A2d 895 (1942).

in trade." 3 Restatement, Torts, Introductory Note to ch 35, p 540.[8] The cases adopting the higher standard of "commercial morality" emphasize the breach of the confidence reposed in the defendant, rather than the existence of the trade secret.[9] As the court stated in *Vulcan Detinning Co. v. American Can Co.*, 72 NJ Eq 387, 67 A 339, 343 (1907), "too much emphasis has perhaps been placed upon the element of absolute secrecy in the process, and that not enough stress has been laid upon the inequitable character of the defendants' conduct in making a use of such process that was inimical to the complainant's interests. * * * [T]he secrecy with which a court of equity deals is not necessarily that absolute secrecy that inheres in discovery, but that qualified secrecy that arises from mutual understanding, and that is required alike by good faith and by good morals."[10] On similar grounds the element of novelty has been minimized, the emphasis being placed upon the unfairness to plaintiff if defendant is permitted to appropriate the plaintiff's idea.[11]

---

[8] Quoted and relied upon in Vitro Corporation of America v. Hall Chemical Co., 254 F2d 787, 794 (6th Cir 1958) which cites other cases adopting the same view. Similarly, it has been stated that:

"* * * The robber baron morality of another day is no longer acceptable. Courts are insisting on increasingly higher standards of commercial integrity. * * * * * It is simply the difference between right and wrong, honesty and dishonesty which is the touchstone in an issue of this kind." Seismograph Service Corp. v. Offshore Raydist, 135 F Supp 342, 354-355 (E D La 1955).

See, Allen-Qualley Co. v. Shellmar Products Co., 31 F2d 293 (N D Ill 1929).

[9] See, Comment, 1953 Wash U L Q 446.

[10] Quoted approvingly by this court in McKinzie v. Cline, 197 Or 184, 192, 252 P2d 564, 568 (1953). See, Seismograph Service Corp. v. Offshore Raydist, supra; Tabor v. Hoffman, supra.

[11] McKinzie v. Cline, supra. *Accord*, Extrin Foods v. Leighton, 115 NYS2d 429, 435 (Sup Ct 1952). See also, Schonwald v. F.

152

█ Whether the information disclosed was intended to be appropriable by the disclosee will depend upon the relationship of the parties and the circumstances under which the disclosure was made. It is not necessary to show that the defendant expressly agreed not to use the plaintiff's information; the agreement may be implied.[⓸] And the implication may be made not simply as a product of the quest for the intention of the parties but as a legal conclusion recognizing the need for ethical practices in the commercial world.[⓹] In the case at bar the relationship between plaintiff and Kuhnau was such that an obligation not to appropriate the plaintiff's improvements could be implied. Kuhnau was paid to assist plaintiff in the development of the latter's idea. It must have been apparent to Kuhnau that plaintiff was attempting to produce a unit which could be marketed. Certainly it would not have been contemplated that as soon as the packer unit was perfected Kuhnau would have the benefit of plaintiff's ideas and the perfection of the unit through painstak-

---

Burkart Mfg. Co., 356 Mo 435, 202 SW2d 7, 13 (1947), which states as follows:

"* * * Although the abstract idea was not new, we think that the evidence warrants a finding that plaintiff had conceived and developed a specific concrete method of his own for the use and application of this abstract idea to accomplish a definite result, namely: to use available ingredients to make a certain type of canvas shoe sole. Defendant showed that it believed this method and product was something new, useful and novel by widely advertising it as a 'sensational new sole,' and 'an original creation,' and definitely an improvement. It is hardly in a position now to claim that the evidence conclusively shows that it was exactly the same plan and product known to and made by many others."

See also, Englehart, Confusion Unlimited, 34 Geo L J 302 (1946).

[⓸] Brown v. Fowler, 316 SW2d 111 (Tex Civ App 1958).

[⓹] Telechron, Inc. v. Parissi, 197 F2d 757 (2d Cir 1952); Schreyer v. Casco Products Corp., 190 F2d 921 (2d Cir 1951); 1 Nims, Unfair Competition and Trade-Marks 423 (4th ed 1947). See, 31 Cornell L Q 382 (1946).

ing and expensive experimentation. It is to be remembered that the plaintiff's experimentation was being carried on, not on the assumption that he was duplicating an existing machine, but upon the assumption that he was creating a new product.[④] It has been recognized in the cases that a manufacturer who has been employed to develop an inventor's ideas is not entitled to appropriate those ideas to his own use.[⑤]

*Hyde Corporation v. Huffines,* 158 Tex 566, 314 SW2d 763, cert. denied 358 US 898, 79 S Ct 223, 3 L Ed2d 148 (1958) is closely in point. In that case the defendant manufacturer, having gained knowledge of a garbage compressor through a licensing agreement with the plaintiff inventor, repudiated the agreement and proceeded to manufacture and sell on its own account a compressor of similar design. Defendant was enjoined. The court held that the parties were in a confidential relationship and that the information re-

---

[④] In Pidot v. Zenith Radio Corporation, 308 Ill App 323, 31 NE2d 385, 393 (1941), the court said: "It is apparent that insofar as the parties were concerned, plaintiffs' design was new and novel." This language was quoted in McKinzie v. Cline, supra 197 Or at 191, 252 P2d at 567.

"* * * The bare circumstance that the parties regarded and treated the machines as secret may not establish the fact of secrecy. * * * It is a circumstance, however, that may be considered with the other facts bearing upon this issue." L. M. Rabinowitz & Co. v. Dasher, 82 NYS2d 431, 437 (Sup Ct 1948).

[⑤] Consolidated Boiler Corp. v. Bogue Electric Co., 141 NJ Eq 550, 58 A2d 759, 769 (1948). See, International Industries v. Warren Petroleum Corp., 99 F Supp 907 (D C Del 1951). Cf., Smith v. Dravo Corp., 203 F2d 369 (7th Cir 1953) (disclosure to manufacturer for purpose of selling business to it); Allen-Qualley v. Shellmar Products Co., 31 F2d 293 (D C N D Ill 1929) (defendant hired to manufacture rather than develop product); William A. Meier Glass Co. v. Anchor Hocking Glass Corp., 95 F Supp 264 (D C W D Pa 1951) (inventor exhibited article to manufacturer for purpose of selling or leasing it to latter); American Mint Corporation v. Ex-Lax, Inc., 263 App Div 89, 31 NYS2d 708 (1941) (manufacturer hired plaintiff to furnish ideas).

lating to the compressor acquired by the defendant incident to that relationship could not be appropriated by him. In that case, as in the present case, plaintiff obtained a patent during the course of the trial. The defendant argued that since plaintiff's process was revealed by the patent the process could not be regarded as a trade secret. The court held that the public disclosure of plaintiff's process did not remove defendant's duty not to exploit the economic advantage gained through the information initially disclosed to him by plaintiff. We see no essential difference between the facts in the *Hyde* case and the case at bar.

■■ The principles applied in the foregoing cases have been recognized by this court. In *McKinzie v. Cline*, 197 Or 184, 252 P2d 564 (1953), the plaintiff employed the defendants to manufacture a gun swivel which one of the plaintiffs had invented. The defendants discontinued manufacturing the swivel for the plaintiffs and proceeded to manufacture and sell it for their own account. It was held that defendants violated a confidential relationship which existed between the parties and that therefore plaintiffs were entitled to an injunction and damages. In that case, as in the present one, plaintiffs had placed their product on the market and had discussed its manufacture with various machinists. The court noted that there was no "evidence in the record that anyone other than defendant Cline and the plaintiffs had any knowledge of the inside workings of the gadget." 197 Or at 191-192. The court went further and held that even though others might have become acquainted with the manufacturing process this would not entitle the defendants to violate the confidence reposed in them by the plaintiffs. With respect to this point, defendants in the present case argue that the *McKinzie* case is distin-

guishable from the case at bar in that the mechanism of the gun swivel was complex, whereas the mechanism of the garbage truck was not. The evidence does not support this contention. The description of the packer mechanism, particularly the manner in which the blade was attached (the proper adjustment of which was one of the principal improvements claimed by plaintiff), would indicate that it was of such complexity that more than a general inspection of the unit would be required to reveal the secret of plaintiff's improvements. The *McKinzie* case followed the line of authority previously discussed which de-emphasizes the elements of secrecy and novelty and stresses the breach of the confidential relation between the parties. The court adopted the higher standard of commercial ethics to which we have already alluded:

> "If our system of private enterprise on which our nation has thrived, prospered and grown great is to survive, fair dealing, honesty and good faith between contracting parties must be zealously maintained; therefore, if one who has learned of another's invention through contractual relationship, such as in the present case, takes unconscionable and inequitable advantage of the other to his own enrichment and at the expense of the latter, a court of equity will extend its broad equitable powers to protect the party injured." 197 Or at 195.

We reaffirm this declaration of business ethics and hold that defendant Kuhnau violated his duty to plaintiff by appropriating the information derived through their business relationship.

Defendants contend that there was no proof that their product contained the improvements alleged to have been developed by plaintiff. There is evidence that the plaintiff's and defendants' trucks were similar

in structure and design. The trial judge, who inspected the trucks, concluded that defendants' trucks used the improvements developed by plaintiff. Where a person develops a product similar to that developed by his discloser, the proof of similarity may be sufficient to impose upon the disclosee the burden of proving that there was no misappropriation. *Hoeltke v. C. M. Kemp Mfg. Co.*, 80 F2d 912, 924 (4th Cir 1936), stated: "The similarity of defendant's device to that of complainant is strong proof that one was copied from the other; for it is hardly probable that different persons should independently of each other invent devices so nearly similar at so nearly the same time."[20] In the same case the court said that "one who admittedly receives a disclosure from an inventor, proceeds thereafter to manufacture articles of similar character, and, when called to account, makes answer that he was using his own ideas and not the ideas imparted to him" must sustain his position by proof that is "clear, satisfactory, and beyond a reasonable doubt." 80 F2d at 923. We are of the opinion that there was sufficient evidence to support the conclusion that defendants appropriated plaintiff's improvements.

The trial court allowed damages in the amount of $19,272.48. This amount was computed as plaintiff's loss of royalties. The evidence showed that plaintiff derived a five percent royalty upon sales of his own product. The court computed plaintiff's loss

---

[20] In Schreyer v. Casco Products Corp., 97 F Supp 159, 169 (D C Conn 1951), the court said:

"* * * This iron is so similar in design to Schreyer's Steam-O-Matic * * * as to create an inference that defendants made use of the blueprints, components, blanks and manufacturing 'know-how' which had been disclosed to them in confidence."

*Accord,* Smith v. Dravo Corp., *supra.*

by using the same percentage based upon defendants' sales. This was an acceptable method of computing plaintiff's damage and there was evidence to support the court's finding.[⑰] Defendants contend that the royalties, if allowed, should be limited to the plow units and should not be based upon the entire truck. Plaintiff's loss arose out of his failure to sell the truck and the compressor mechanism as one unit. He should be entitled to recover for this loss.

■ The trial court permanently enjoined defendants from competing with plaintiff in the manufacture and sale of garbage truck bodies utilizing the ideas and inventions acquired by defendants in the course of the confidential relationship. The defendants argue that injunctive relief is inappropriate because after the issuance of the patent to plaintiff his trade secret, if any existed, was revealed to the world. A similar contention was made in *Hyde Corporation v. Huffines*, 158 Tex 566, 314 SW2d 763, 774-775, cert. denied 358 US 898, 79 S Ct 223, 3 L Ed2d 148 (1958).[⑱] Noting the conflict of authority on the point the court, quoting from *Franke v. Wiltschek*, 209 F2d 493, 495 (2d Cir 1953), said:

> " '* * * This totally misconceives the nature of plaintiffs' right. Plaintiffs do not assert, indeed cannot assert, a property right in their development such as would entitle them to exclusive enjoy-

---

[⑰] Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 116 F2d 708 (7th Cir 1941); Michel Cosmetics, Inc. v. Tsirkas, 282 NY 195, 26 NE2d 16 (1940). See, Obear-Nester Glass Co. v. United Drug Co., 149 F2d 671 (8th Cir 1945); Nims, Damages and Accounting Procedure in Unfair Competition Cases, 31 Cornell L Q 431 (1946); Note, Lost Profits as Element of Damages in Willful Unfair Competition Cases, 9 U Fla L Rev 336 (1956); 4 Callman, Unfair Competition and Trade-Marks § 89.1(a) (2d ed 1950). See also, McCormick, Damages §§ 25, 26, 28 (1935). Cf., Ellis, Trade Secrets 377-379 (1953).

[⑱] The result is criticized in a note in 36 Tex L Rev 384 (1958).

ment against the world. Theirs is not a patent, but a trade secret. The essence of their action is not infringement, but breach of faith. It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment. This duty they have breached.' "

We agree with the foregoing analysis. When plaintiff entered into the arrangement with defendant Kuhnau for the development of the garbage truck unit and ultimately for its manufacture we think that there was implicit in this relationship an obligation not to compete. As we have pointed out, this obligation continued in spite of the fact that a careful inspection of plaintiff's product on the market might reveal the character of the improvement developed by him. It is quite probable that the public disclosure resulting from the marketing of the product in this case would be as great as the disclosure resulting from the issuance of the patent.

Were we to hold, as some cases do,[19] that an injunction will not be granted after *patent* disclosure, to be consistent we would be forced to hold that injunctive relief would not be available to plaintiff after

---

[19] Conmar Products Corporation v. Universal Slide Fastener Co., 172 F2d 150 (2d Cir 1949); Picard v. United Aircraft Corporation, 128 F2d 632 (2d Cir 1942) (Hand, J.); Darsyn Laboratories v. Lenox Laboratories, 120 F Supp 42 (D C NJ 1954), affirmed 217 F2d 648 (3d Cir 1954). In discussing this line of authority Hyde Corporation v. Huffines, 158 Tex 566, 314 SW2d 763, 774, cert. denied 358 US 898, 79 S Ct 223, 3 L Ed2d 148 (1958) said: "* * * Although there are decisions which suggests support for [this] position, we believe that reason and the weight of authority are to the contrary." (Extensive collection of cases).

disclosure by marketing the product. This would in effect vitiate the very rule we have adopted in sustaining the judgment for damages. The reasons which we have set forth above in support of the rule permitting recovery of damages for misappropriation of a confidential disclosure are equally applicable in support of a rule permitting injunctive relief. It is not reasonable to assume that plaintiff intended to be protected against competition from Kuhnau only until a patent was obtained. We hold, therefore, that a permanent injunction was properly granted.

Defendants contend that the decree in effect protects the alleged patent and awards damages for its infringement. The decree enjoins the manufacture and sale of garbage truck bodies "utilizing the ideas and inventions *acquired by defendant or either of them from the Plaintiff in the course of the confidential relation* * * * and specifically from the manufacture and sale of front loading, half pack garbage truck bodies using a hydraulically operated plow, *the details of which were acquired pursuant to such confidential relationship* and which details are set forth in seven pages of patent drawings." (Emphasis added.)

■ The decree proscribes only against the use of ideas acquired in the course of the confidenial relation. The fact that coincidentally the defendants' use of these ideas may also constitute an infringement of plaintiff's patent is immaterial.

We have examined the other assignments of error and find no merit in them.

The decree is affirmed.