**AMERICAN REPUBLIC INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**UNION FIDELITY LIFE INSURANCE COMPANY, a corporation, and LeRoy C. Lindgren, Robert Anderson, et al., Defendants.**

Civ. No. 67–259.

United States District Court
D. Oregon.

Dec. 18, 1968.

Roland F. Banks, Jr., Rockne Gill, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiff.

James C. Dezendorf, McColloch, Dezendorf & Spears, Portland, Or., for Defendant Union Fidelity Life Ins. Co.

Otto R. Skopil, Jr., Williams, Skopil & Miller, Salem, Or., for defendants LeRoy C. Lindgren and Robert Anderson.

## OPINION

SOLOMON, District Judge:

American Republic Insurance Company (American) filed this action for unfair competition, tortious interference with contract, and antitrust violations against Union Fidelity Life Insurance Company (Union) as well as LeRoy C. Lindgren, American's former area manager for Oregon and Washington, and Robert A. Anderson, American's former assistant area manager assigned to Washington.[1] The issue of damages was segregated, and trial was held on the issue of liability only. This issue involves three questions:

*First*: Are Lindgren and Anderson liable for using for their new employer (Union) customer lists which were acquired through the efforts of their former employer (American) and which are not otherwise available to the trade?

*Second*: What is the liability of Lindgren, who, while still under contract with American, decided to work for Union and encouraged other American employees to switch to Union?

*Third*: Is Union liable for such conduct?

Lindgren worked exclusively for American as its area manager for Oregon and Washington, and Anderson was his assistant in Washington. They were in charge of recruiting, training and supervising approximately 27 full time agents, who also worked exclusively for American. The employment contracts between American and Lindgren, American and Anderson, and American and the 27 agents were terminable at the will of either party.

Lindgren, Anderson and the agents did very little "door-to-door" solicitation. They obtained their customer leads from responses to national advertising campaigns conducted by American. The lists of customers accumulated in this manner were not available to American's competitors.

Prior to 1967, Union operated under the American Agency Plan. Its agents, while licensed to sell its insurance, were independent and free to sell for other companies as well. In 1966, however, Union established a "Career Division" for agents who worked exclusively for it.

In early 1967, Lindgren negotiated with Harry T. Dozer, President of Union, and Alfred P. Colleta, Vice-President of Union, for a position in Union's "Career Division." A contract was signed on April 10, 1967. It was understood that Anderson would be Lindgren's partner. The contract provided that Lindgren would work exclusively for Union, and it contained the following provision:

"1. APPOINTMENT AND RELATIONSHIP. You are authorized to solicit applications for insurance for us, to forward these applications to us for approval or rejection, and to collect only the initial premium payment due on such applications. You shall diligently devote yourself to the business of this appointment, but shall be free to exercise your own judgment as to the persons from whom you will solicit applications and the time and place of solicitation, subject to the provisions of this Agreement, it being especially understood that your relationship to us shall be that of an independent Contractor only, and that nothing herein shall be construed to create a relationship of employer and employee between you and us * * *."

1. American's complaint named, in addition to these defendants, several of its former salesmen. American dismissed the action against these salesmen.

On April 22, 1967, Lindgren and Anderson tendered their resignations to American.

Union knew of Lindgren's position with American and of his agent and customer following. He was hired in the "Career Division" primarily because Dozer and Colleta thought that he could transfer his organization and business to Union.

■ I find that Lindgren and Anderson committed acts of unfair competition when they used the American customer lists after terminating their employment with that company. These lists were developed almost entirely through the efforts of the employer (American). They were disclosed to Lindgren and Anderson in the course of their employment, and they, as exclusive employees of American, exercising supervisory responsibilities over branches of American's operations, were in a confidential relationship with American and owed it their undivided loyalty. Agents in a confidential relationship may not use customer lists in competition with the employer who accumulated them. Kamin v. Kuhnau, 232 Or. 139, 374 P.2d 912 (1962). In Kamin, plaintiff employed defendant to aid in developing a product which both mistakenly thought was original. After the product was developed, defendant manufactured it for his own account. He argued that since the device was well known, he could not be guilty of stealing trade secrets. The Court rejected that reasoning and held that the issue was whether the defendant breached a confidential relationship. In deciding for plaintiff, the Court said that if the facts gave rise to a confidential relationship, the defendant was liable unless he was able to show that he did not get the information from the plaintiff.

Defendants' reliance on Prentice Dryer v. Northwest Dryer, 246 Or. 78, 424 P.2d 227 (1967), is misplaced. There plaintiff hired a highly skilled employee, who developed a product solely through his own talents. The processes he used to develop the device were not secret. The employee left plaintiff and manufactured the product for his own account. The Court held that the former employee was not guilty of unfair competition. The Court distinguished Kamin where the former employer, having information, disclosed it to his employee whom he had hired to help develop the business. In Prentice, the product resulted solely from the efforts of the employee, who brought to his job a specific knowledge of the product in question.

Defendants assert that the customer lists were memorized and not written, and therefore solicitation of customers was not unfair competition.

■ Even if the lists were memorized it would not change the result. While there is no case in point in Oregon, and cases in other jurisdictions are not in agreement, the modern trend clearly is to discard the written-memorized distinction. A. H. Emery Co. v. Marcan Products Corp., 268 F.Supp. 289 (S.D.N.Y.1967); United Ins. Co. of America v. Dienno, 248 F.Supp. 553 (E.D.Pa.1965); Sperry Rand Corp. v. Rothlein, 241 F.Supp. 549 (D.Conn. 1964); Whitted v. Williams, 226 Cal. App.2d 52, 37 Cal.Rptr. 692 (1964). This trend has support among the commentators, 2 R. Callmann, Unfair Competition, Trademarks and Monopolies 442–48 (3d ed. 1968). I believe the Oregon Supreme Court would follow it because in Oregon the Court has emphasized that the basis of trade secret protection is breach of a confidential relationship. McKinzie v. Cline, 197 Or. 184, 252 P.2d 564 (1953). Under this rationale there is no reason to distinguish between the employee who memorizes a list of customers and the employee who takes the list itself.

■ Defendant Lindgren committed an act of unfair competition when, while still employed by American, he encouraged other American employees to join him in moving to Union. Defendants argue that Lindgren did nothing more than make plans for new employment

while still working for the employer he intends to leave. I disagree. Here an employee having charge of his employer's operations in two states, while still serving in that capacity, encouraged other employees to join him in moving to an insurance company which was trying to raid the first company's sales force. Cf. Duane Jones Co. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954). Defendants rely on National Rejectors, Inc. v. Trieman, 409 S.W.2d 1 (Mo. 1966). In that case the Missouri Court apparently thought that an employee who induces other employees whose contracts are terminable at will to join him in leaving the employer cannot be guilty of unfair competition unless the employees take with them protectible trade secrets. The Court found no trade secrets. It is unlikely that the Oregon Supreme Court would follow this result, Kamin v. Kuhnau, supra, and it is distinguishable because here the customer lists were protectible trade secrets. Defendants also cite Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F.Supp. 250 (S.D.Cal.1958), aff'd. 283 F.2d 695, cert. denied 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859. However, the portion of that opinion on which defendants rely dealt not with a suit against a former employee for breach of confidence, but with an alleged conspiracy between the new employer and one employee to lure employees from the old employer. The Court rejected the claim because it found no "enticement" of the employees by the new employer. It did not consider whether the one employee alleged to be part of the conspiracy breached a confidential relationship.

■■ Union is liable for the acts of unfair competition of Lindgren and Anderson. A company which knowingly participates in, encourages, and accepts the benefits of, acts of unfair competition committed by a person against his former employer is liable for those acts.

Bancroft-Whitney Company v. Glen, 64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921 (1966); Restatement 2d, Agency § 312, comments (c) and (d). Here Union hired Lindgren and Anderson because it believed both could transfer their customer followings, and Lindgren could transfer the sales force, to that company.

■ Union contends that paragraph 1 of the contract between it and the individual defendants, making them independent contractors, shelters it from vicarious liability for the acts of Lindgren and Anderson.[2] The cases upon which Union relies all deal with the liability of a party for the acts of an independent contractor. Kowaleski v. Kowaleski, 235 Or. 454, 385 P.2d 611 (1963); Wallowa Valley Stages, Inc. v. The Oregonian Publishing Company, 235 Or. 594, 386 P.2d 430 (1963); Jenkins v. AAA Heating and Cooling, Inc., 245 Or. 382, 421 P.2d 971 (1966); Winniford v. MacLeod, 68 Or. 301, 136 P. 25 (1913). Not one is in point because here Union knowingly encouraged and accepted the benefits of the acts of the parties who it asserts are independent contractors. The cases cited by Union do not hold that a person who conducts himself in this manner may escape liability on the ground that the people who actually commit the torts are independent contractors. Union in its trial brief concedes that " * * * Union could be held liable for the torts of Lindgren and Anderson had it intended or directed tortious conduct on their part or 'intentionally caused or assisted' them in violating their fiduciary duties to plantiff." I find that Union engaged in this conduct. It is therefore liable for the actions of Lindgren and Anderson.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a) Fed.R.Civ.P.

The parties shall prepare and submit a proposed pretrial order on the issue of damages on February 17, 1969.

---

2. I am inclined to believe that, notwithstanding the contractual provision, an employer-employee relationship existed. However, it is unnecessary to decide this question.