**RADIATOR SPECIALTY COMPANY, a Corporation, Appellant,**

v.

**Richard MICEK, Appellee.**

**No. 18130.**

United States Court of Appeals Ninth Circuit.

Jan. 15, 1964.

Rehearing Denied April 1, 1964.

Miketta, Glenny & Poms, Los Angeles, Cal., and Channing L. Richards, Charlotte, N. C., for appellant.

Fulwider, Mattingly & Huntley, and Francis A. Utecht, Long Beach, Cal., and Horace B. Van Valkenburgh, Denver, Colo., for appellee.

Before CHAMBERS, STEPHENS and JERTBERG, Circuit Judges.

CHAMBERS, Circuit Judge.

This is a patent and misuse of confidential information contest between the owners of two flushing devices in toilet tanks. Micek, plaintiff-appellee, owns POSITIVE FLUSH CONTROL. Radiator Specialty, defendant-appellant, owns SEAL-O-MATIC. Each is patented, Micek filing first. The claims of each patent are set out in the appendix hereafter.

The district court has held claims 1 to 7 of the POSITIVE FLUSH CONTROL infringed by SEAL-O-MATIC and that there was a misuse of confidential information by SEAL-O-MATIC'S owners. Also, attorney fees were awarded Micek (POSITIVE) against Radiator Specialty (SEAL-O-MATIC). But the court denied Micek any relief on his claim of unfair competition. As is standard procedure in patent cases, amounts of damage remain for future determination. We affirm the district court.

For many, many years the conventional outlet valve from the water closet to a toilet bowl involved a rubber ball on the bottom end of a perpendicular rod or wire (usually brass). In repose, the rubber ball sat in a collar on the top of the outlet pipe. If in good order, the ball sitting in the pipe collar blocked

the exit of water to the toilet bowl as long as desired. To activate the water and flush the bowl, one would press the conventional handle on the outside of the water closet. This would lift a lever which raised the rod and ball and let the water out. In due time, after the departure of the water, the ball, still on its rod, would drop down and seal up the outlet. Then the process of refilling the tank would begin. When filled, the incoming water would be cut off by the inlet valve and float ball, the familiar hollow brass sphere (now often plastic) on a stiff long wire or arm.

For residence use, the water tank type of bathroom fixture continues to be the conventional type, necessitating always inlet and outlet valves. As indicated, we deal here with the outlet valve.

Over the years, both inlet and outlet valves have been sources of trouble and the subject of attempts by the householder to fix them, or perhaps a hurried call for the plumber. Apparently the conventional rod apparatus has too much "play" in its permissible movement, although anything which has been standard so long must have some merit.

■ Of recent years, there has been a spate of new patents aimed at the outlet. Most seem to retain some sort of a ball to seat itself in the outlet pipe's top collar. Adjacent to all outlet valves is an overflow drain pipe, which is convenient to fasten things to or around. Micek worked out a clamp bracket to go around the drain pipe. (Obviously that was easy.) The bottom of the clamp collar sits an inch or two above the bottom of the drain pipe. Then a yoke straddles the pipe. This is made of heavy wire which narrows as it reaches the area over the outlet collar. The rubber ball is suspended from the double arm formed by the yoke. Into the bracket the two wires turn as they are astraddle the pipe. Thus the pivot is formed by the two ends of the yoke as they hook into the bracket. At the loop on the yoke a chain is fastened which is connected to the conventional trip lever of the water closet. In use, when the chain lifts the ball and yoke

out of the outlet collar the yoke and balls swing in a short arc of approximately 90 degrees upward against the overflow pipe. (Thus, the movement contrasts from that of the usual vertical plunger and ball.) In due time, the arm yoke and ball swing down and the outlet pipe is again closed. Apparently both parties believe the device achieves a stability of function not known in the conventional type. The yokes of POSITIVE and of SEAL-O-MATIC are very, very much alike. The rubber ball itself, which is not part of the patent, fastens identically through the channel of the parallel arms. POSITIVE's arms fasten into the clamp in behind the overflow pipe. SEAL-O-MATIC's pivoting starts in the clamp at the point of maximum diameter of the pipe. The SEAL-O-MATIC device's mounting is a little simpler, but if Micek's patent is valid, copying in principal by Radiator Specialty seems obvious. We agree with the trial court that Radiator's device infringes claims 1 to 7 of the Micek patent through .a substitution of equivalents.

We have traced through all of the prior art patents placed in evidence by the parties and we do not find Micek's patent anticipated by any of them. The presumption of validity, to us, remains unimpaired. Broken up into little parts, there is nothing new about any feature. But it is the combination of many old elements that has created something new (for the moment at least) beyond the ordinary mechanic's skill.

■ We find that the trial court's findings as to breach of a confidential relationship are well supported. There was something worse than merely tough competition. We hold that the principles of McKinzie v. Cline, 197 Or. 184, 252 P.2d 564, apply. At this point, it should be pointed out that any damage for this breach will probably all be included within the damage to be ascertained for the patent infringement.

■ Radiator objects to the award of attorney fees to Micek. As we analyze appellant's objection thereto (although it may not concur in the analysis) it really

attacks the validity of the findings on the two causes of action which have been sustained. Of course, if someone has unwittingly infringed on another's patent, we would not approve attorneys' fees. But here there have been findings supported by substantial evidence that there was poaching on the product of Micek's mind in a rather aggravated way. Under such findings, allowance of reasonable attorneys' fees is within the discretion of the trial court.

The judgment and decree are affirmed.

## APPENDIX

A. *The Positive Flush Control Patent.*

The Claims passed by the patent office on February 19, 1957, on Micek's patent are as follows:

"1. A valve ball mounting for a toilet flush tank having an overflow pipe and outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket mounted on said pipe, hinge means carried by the bracket, a resilient yoke straddling said pipe to extend at its forward end portion over said ball and having free rear ends held by the resiliency of the yoke in pivotal engagement with said hinge means, stop means on said bracket coacting with the rear ends of said yoke and disposed to space the rear end portions of the yoke away from said hinge means and limit the yoke against lateral play to swing in a straight path lying in a plane with the center of said seat, and means connecting the ball with the forward end portion of said yoke.

"2. A valve ball mounting for a toilet flush tank having an overflow pipe and outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket mounted on said pipe, a resilient yoke straddling said pipe to extend at its forward end portion over said ball and having free rear ends provided with trunnions pivotally engaged with said bracket and adapted to be spread for disconnecting the yoke from the bracket, said trunnions having terminal end faces, stop means on the bracket coacting with the end faces of said trunnions and disposed to limit the yoke against lateral play to swing in a straight path lying in a plane with the center of said seat, and means connecting the ball with the forward end portion of said yoke.

"3. A valve ball mounting for a toilet flush tank having an overflow pipe and outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket mounted on said pipe, a yoke straddling said pipe to extend at its forward end portion over said ball and having free rear ends provided with trunnions pivotally engaged with said bracket, lugs carried by the bracket and abutting the ends of said trunnions for limiting the yoke against sidewise movement on the bracket to swing in a straight path lying in a plane with the center of said seat, and means connecting the ball with the forward end portion of the yoke.

"4. A valve ball mounting for a toilet flush tank having an overflow pipe and outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket mounted on said pipe, a yoke provided at its forward end portion with a beak having closely spaced sides defining an unobstructed area therebetween extending over said ball and formed at their rear ends with diverging offsets provided with rearwardly extending legs straddling said pipe and having trunnions pivotally engaged with said bracket, and means extending between the sides of said beak and connecting the ball with said yoke, said offsets being disposed to engage said pipe when the yoke is swung upwardly and limit the ball to a shortened upward throw determined by the arc of said offsets.

"5. A valve ball mounting for a toilet flush tank having an overflow

pipe and outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket fixed to said pipe and including a body plate having spaced hinge lugs thereon and provided between said lugs with stop lugs facing said hinge lugs, a yoke extending at its forward end portion over said ball and provided with legs straddling said pipe and having trunnions thereon pivotally engaged through said hinge lugs to abut said stop lugs for limiting the yoke against sidewise movement on the bracket to swing in a straight path lying in a plane with the center of said seat, and means connecting the ball with the forward end portion of said yoke.

"6. As a new article of manufacture, a valve ball mounting for toilet flush tanks including a bracket having spaced hinge lugs thereon and provided with a clamp for connecting said bracket with an overflow pipe, a yoke adapted to carry a valve ball and provided with spaced resilient side portions having trunnions thereon pivotally engaged with said hinge lugs, the side portions of the yoke being adapted to be spread for freeing said trunnions from said lugs, and stop lugs carried by said bracket to abut the ends of said trunnions for limiting the yoke against sidewise movement on the bracket to swing in a straight path.

"7. A valve ball mounting for a toilet flush tank having an overflow pipe and an outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket mounted on said pipe, a yoke composed of a length of resilient material formed medially with a loop having straight sides defining a slot therebetween and provided at their rear ends with rearwardly diverging offsets terminating in spaced rearwardly extending legs straddling said pipe and having trunnions extending in alignment at the rear ends of said legs and pivotally engaged

with said bracket supporting the yoke to extend at the loop thereof over said ball, and means extending through said slot fixing the ball to said loop and adjustable longitudinally of said slot for centering the ball with respect to said seat, the offsets of the yoke being disposed to engage said pipe when the yoke is swung upwardly and limit the ball to a shortened upward throw determined by the arc of said offsets.

"8. A valve ball mounting for a toilet flush tank having an overflow pipe and an outlet provided with a valve ball seat, and a valve ball coacting with said seat, a hinge bracket including a body plate having lateral ears thereon, one of said ears being provided with an L-shaped slot having a vertical portion extending transversely of said ear and a horizontal portion extending lengthwise of said ear and cooperating with the vertical portion of said slot to define a corner lug in the angle between said portions of the slot, a strap cooperating with the body plate to provide a clamp embracing said pipe, said strap being formed at one end with a tongue having an uninterrupted lower edge and provided at its upper edge with a notch, said tongue being of a major width substantially equal to the length of the verticle portion of said slot and being, without tilting the strap and while the width of the strap faces the width of said body plate, slidably receivable through the vertical portion of said slot to dispose of said notch opposite said lug as well as laterally shiftable in the horizonal portion of said slot to engage said lug in said notch and connect the strap at one end thereof with said ear, means connecting the strap at its opposite end to the other of said ears and binding the bracket on said pipe, spaced rearwardly projecting hinge lugs carried by the body plate, a yoke extending at its forward end portion over said ball and provided

with spaced legs straddling said pipe and having trunnions thereon pivotally engaged through said hinge lugs, means connecting the ball with the forward end portion of said yoke, and means carried by the body plate to coact with said trunnions and limit the yoke against lateral play to swing in a straight path lying in a plane with the center of said seat."

B. *The Seal-O-Matic Patent.*

The claims of the Branch patent, assigned to Radiator Specialty Company, passed by the patent office on January 29, 1957, are as follows:.

"1. A flush control unit comprising a collar strap arranged for clamping around a flush tank overflow pipe, said collar strap having a pair of ears offset outwardly therein at diametrically opposite positions with diametrically aligned pivot apertures in said ears, a yoke member formed with a pair of symmetrical leg portions joined at one end and extending adjacent the joined ends thereof in relatively closely spaced parallel relation for a substantial length and then spreading to terminate at inwardly angled pivot arm portions fitting said pivot apertures, with the inwardly extending ends thereof abutting said overflow pipe and thereby preventing any lateral shifting of said yoke member, and a valve ball secured at the closely spaced length of said leg portions by fastening means extended between said leg portions and seated on a clamping washer having opposite downwardly rounded edges reaching over said leg portions and thereby preventing said leg portions from spreading.

"2. A flush control unit comprising a collar strap arranged for a clamping around a flush tank overflow pipe, said collar strap having a pair of ears offset outwardly therein at diametrically opposite positions with diametrically aligned pivot apertures in said ears, a yoke mem-. ber formed with a pair of symmetrical leg portions joined at one end and extending adjacent the joined ends thereof in relatively closely spaced parallel relation for a substantial length and then spreading to terminate at inwardly angled pivot arm portions fitting said pivot apertures with the inwardly extending ends thereof abutting said overflow pipe and thereby preventing any lateral shifting of said yoke member, and a valve ball secured at the closely spaced length of said leg portions by fastening means extended between said leg portions and seated on a clamping washer having opposite downwardly rounded edges reaching over said leg portions and thereby preventing said leg portions from spreading.

"3. A flush control unit for use in combination with a flush tank drain housing having a valve ball seat formed therein and fitted laterally of said seat with an overflow stand pipe, said unit comprising a collar strap arranged for clamping about the full circumference of said overflow stand pipe at an adjusted position, said collar strap having a pair of ears offset outwardly therein at diametrically opposite positions with diametrically aligned pivot apertures formed in said ears, a yoke member formed with a pair of symmetrical leg portions joined at one end and formed at the other ends thereof within inwardly angled pivot arm portions fitting said pivot apertures with the inwardly extending ends thereof abutting said overflow pipe and thereby preventing any lateral shifting of said yoke member, said leg portions extending adjacent the joined ends thereof in relatively closely spaced parallel relations for a length sufficient to reach across said housing valve seat when said arm portions are fitted in said pivot apertures, and said leg portions being crimped inwardly in relatively closely spaced relation from the

joined ends thereof for forming an anchoring eye thereat, a valve ball secured at the closely spaced length of said leg portions at an adjusted position in relation to said housing valve seat by fastening means extended between said leg portions and seated on a clamping washer having opposite downwardly rounded edges reaching outwardly over said leg portions and thereby preventing said leg portions from spreading, and a lift chain secured at one end in said anchoring eye."