Argued January 6, affirmed February 23, 1967

# E. V. PRENTICE DRYER COMPANY, INC., *Appellant, v.* NORTHWEST DRYER & MACHINERY CO. ET AL, *Respondents.*

424 P. 2d 227

*J. Pierre Kolisch,* Portland, argued the cause for appellant. With him on the briefs were Jon M. Dickinson and Moe M. Tonkon, Portland.

*Howard M. Dupuy,* Portland, argued the cause for respondents. With him on the brief were E. M. Morton and John M. Coke, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, HOLMAN and LUSK, Justices.

O'CONNELL, J.

This is a suit in which plaintiff alleges that defendants engaged in unfair competition in breach of a confidential relationship. Plaintiff seeks an injunction, a constructive trust, an accounting and damages. Plaintiff appeals from a decree in favor of defendants.

Plaintiff is engaged in the manufacture and sale of plywood veneer dryers. Defendant, Northwest Dryer & Machinery Co., is also engaged in the manufacture and sale of veneer dryers. Plaintiff's suit is based upon the theory that defendants, through the conduct of Dale Gordon a former employee of plaintiff, have wrongfully appropriated various ideas with respect to the design and manufacture of veneer dryers developed by plaintiff. It is contended that the appropriation and use of these ideas constitutes unfair competition.

Plaintiff began manufacturing dryers in 1957. Prior to that time it had simply acted as the agent for the sale of veneer dryers manufactured by others. At that time, having little or no experience in the design of plywood dryers, Prentice hired W. D. Martin, who had an extensive knowledge of the servicing, sale, and repair of dryers. However, not being an engineer or machine designer, Martin advised plaintiff to hire defendant Gordon because of the latter's skill and knowledge in those areas. Gordon was then working for another dryer manufacturer.

Primarily through the technical knowledge of Gordon, who served as plaintiff's chief engineer, certain improvements were developed in plaintiff's dryers which were not then used by its competitors. Some of these new features included an improved air flow, improved seals and latches, adjustable manifold doors to control air flow, chain drive mechanism, spring-

loaded chain tightener, and corrugated top panels over the dryer duct work.

In 1962 upon Martin's resignation from plaintiff company, he was succeeded by Gordon as manager of the company, though Gordon continued in his former position as chief engineer and machine designer. In mid-1964, however, defendant Gordon, along with the other individual defendants, resigned from plaintiff company and formed Northwest Dryer & Machinery Co. Shortly thereafter the defendant corporation began to manufacture and offer for sale a plywood veneer dryer which was in many respects similar to that sold by plaintiff.

Plaintiff instituted the present suit alleging that Gordon and his co-defendants have used confidential information acquired while employed by plaintiff. It is contended that this access to confidential information gave rise to a confidential relationship between plaintiff and defendants whereby defendants were under a duty not to use the information for their own benefit. The information which plaintiff alleged to be confidential includes drawings and specifications for veneer dryers, parts lists therefor, and names of plaintiff's customers and sources of supply.

Defendants contend that there was no breach of confidential relationship because all of the information used by them was in the public domain and also because Gordon was simply drawing upon his own engineering knowledge and skill in the manufacture of the Northwest dryer.

■ It is our opinion that defendants' conduct does not constitute unfair competition. The various innovations in the design of the Prentice veneer dryer claimed by plaintiff were not trade secrets. These innovations were well known by others engaged in the manufacture

or use of veneer dryers. Moreover, there was substantial evidence supporting defendants' contention that the improvements in the design of the Prentice dryer were principally the product of Gordon's creative effort. This latter factor in itself is enough to distinguish the present case from *Kamin v. Kuhnau,* 232 Or 139, 374 P2d 912 (1962). Plaintiff did not disclose to Gordon any information concerning the design of the Prentice dryer which could be regarded as confidential in nature. And there was nothing in the terms of his contract of employment or in the nature of his work from which it could be implied that he was not to use for his own purposes features which he himself designed.

Plaintiff contends that defendants wrongfully appropriated plaintiff's materials lists, customers lists, performance data of veneer dryers in various plants, proposals and specifications on jobs, blueprints, and other information concerning the manufacture and sale of veneer dryers which afforded defendants a competitive advantage in the form of a head start in the veneer dryer business.

■ None of this information can be regarded as falling within the definition of a trade secret. Nor can it be said that Gordon acquired knowledge of the information under circumstances indicating a confidential disclosure of it by plaintiff. Essentially all of the information was acquired by Gordon in the course of his work as plaintiff's employee. Some of the data was the product of Gordon's own work.

■ The clearest evidence of plagiarism was that relating to defendants' use of plaintiff's blueprints in making tracings and copies. But in doing so defendants did not acquire any information concerning the Prentice dryer or plaintiff's methods of manufacture and

sale not already known to Gordon as a result of his previous employment with plaintiff and others. Moreover, the evidence shows that the prints of the Prentice dryer as well as those of the dryers of competing companies could have been obtained by defendants from sources other than plaintiff. It may be that defendants, in using plaintiff's drawings, invaded a legally protectible interest which plaintiff had in the drawings, but assuming without deciding that they did, we do not think that defendants' use of the drawings constituted unfair competition.

We do not regard the prints or any of the information concerning the manufacture and sale of dryers by Prentice which Gordon acquired during his employment as confidential in nature. And, as we have already stated, there is nothing else in the relationship between plaintiff and Gordon from which it could be inferred that Gordon was not to use what he learned during the course of his employment. It is our conclusion, therefore, that defendants' use of this information did not constitute unfair competition.

Plaintiff contends that the information defendants acquired during their employment with Prentice concerning bids and proposals made to prospective customers was confidential and, therefore, that it could not be used by defendants in making competing bids and proposals. Gordon's general knowledge of the cost of manufacturing various dryer parts and other costs involved in constructing and installing dryers, which he learned as plaintiff's employee, was not proven to be confidential. Gordon was privileged to use this knowledge in making a competing bid. Plaintiff contends, however, that Gordon, in making a competing bid to one prospective buyer, the MacMillan Bloedel

company, used his knowledge of plaintiff's previous bid to the same prospect. As we have already indicated, Gordon, in making defendants' bid, was free to use his knowledge of the factors relating to costs of manufacture and installation. Defendants would have an advantage if Gordon knew the amount of plaintiff's bid, making it possible for them to underbid the plaintiff. But the evidence does not convince us that Gordon's knowledge of plaintiff's bid was a factor in defendants being awarded the contract in question. Gordon testified that in arriving at his bid he "figured up the approximate cost of material in the dryer by knowledge I had gained of costs, and I figured duty rates, shipping, the estimated time for engineering and operation of our company during this period of time, to get an overall cost, and I added a profit." He figured a "profit of 10 per cent off and overhead costs." When he was asked, "when you figured out that proposal did you have any information available to you from the E. V. Prentice Dryer Company," he responded, "Only the information I had in my head, knowledge that I had from working with these companies over the past six and half years." Having this information which he was entitled to use, the question then narrows down to the importance of his knowledge of the amount of plaintiff's bid. Obviously, it is impossible to determine whether he cut his bid in order to bring it below the bid submitted by plaintiff. The difference was $540 less than plaintiff's bid of $168,540.00. But since there is no evidence that plaintiff's bid was secret, there is no reason why defendants should not be allowed to underbid in this manner. Furthermore, it is likely that a more significant factor in defendants' receiving the bid was the purchaser's confidence in Gordon's ability to produce a quality prod-

uct. That this was a factor is borne out by the testimony of the manager of the prospective purchaser, MacMillan Bloedel company, who testified that his decision to buy from Northwest Dryer was motivated primarily by his opinion of Gordon's technical ability.

■ It is our conclusion that there is nothing in the record to indicate that Gordon took unfair advantage of Prentice in presenting the Northwest Dryer bid to MacMillan Bloedel.

■ The trial court, in a long opinion, painstakingly evaluated the evidence in this case and concluded that plaintiff failed to sustain its burden of proof in establishing unfair competition on the part of defendants. We believe that the trial court's appraisal of the evidence is sound and we adopt that appraisal as a part of this opinion.

Much of plaintiff's argument is predicated upon the premise that the information which Gordon used after forming Northwest Dryer Company was in the nature of a trade secret or that it was divulged to Gordon or acquired by him under circumstances supporting an implied agreement not to employ the information in competition with plaintiff. As we have previously stated, we do not agree with this interpretation of the facts. We wish to re-emphasize that this is not a case like *Kamin v. Kuhnau,* supra, in which an employer, having knowledge of information of value, discloses it to his employee. In the present case we have a technically skilled employee who brought to his job not only specific knowledge of veneer dryer construction obtained in a competing company, but also a general engineering knowledge and skill out of which he developed most, if not all, of the innovations in plaintiff's dryer which it is now trying to protect. We

know of no case which holds that an employee under such circumstances is under a duty not to compete.[1]

The decree is affirmed.

---

[1] On the other hand, there are cases such as Wexler v. Greenberg, 399 Pa 569, 160 A2d 430 (1960) which are in accord with the present holding. In that case a skilled chemist was held not prohibited from using formulas developed while in plaintiff's employ, where development of the formulas was due solely to the knowledge and skill of the chemist.

For an analysis of the special problems encountered in the law of unfair competition with respect to the skilled employee, see Recent Developments, Competitive Torts, 77 Harv L Rev 888, 950-53 (1964); Note, Industrial Secrets and the Skilled Employee, 38 N Y U L Rev 324 (1963); Comment, 74 Harv L Rev 1473 (1961).