Argued and submitted April 23, affirmed September 3, 1986

# HOLLAND DEVELOPMENTS, LTD.,
*Respondent,*

*v.*

# MANUFACTURERS CONSULTANTS, INC. et al,
*Appellants.*

## (A8409-05536; CA A35593)

724 P2d 844

Frank J. Susak, Portland, argued the cause and filed the briefs for appellants.

Rick T. Haselton, Portland, argued the cause for respondent. With him on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff (Holland) brought this action to enjoin defendants from using or disclosing confidential trade secret information. It also sought damages from one or more defendants for misappropriation of trade secrets, unfair competition, tortious interference with contract, interference with prospective business advantage and breach of contract. Defendant Manufacturers Consultants, Inc. (MCI), alleged as an affirmative defense that Holland's claims were barred by provisions of a distribution agreement between Holland and MCI. MCI also asserted counterclaims for breach of the distribution agreement and misappropriation of MCI's trade secrets.

By stipulation of the parties, the case was tried to the court only on issues of liability. The court made detailed findings of fact and ruled for Holland in all significant respects.[1] The court held that Holland was entitled to injunctive relief and damages. Without waiving any right to appeal, the parties then stipulated to damages of $10,000, for which the court entered judgment against defendants jointly and severally. The court also entered an injunction against defendants and awarded Holland attorney fees against MCI for defending the counterclaim for breach of contract. All of defendants' counterclaims were dismissed. Defendants appeal. The dispositive issue is whether the distribution agreement between Holland and MCI provides defendants with a defense to all of Holland's claims for relief. We conclude that it does not. Therefore, we affirm.

Viewing the evidence in the light most favorable to Holland, the record shows that Holland manufactures and sells pressed wood logs. At the relevant time, defendant Billwiller was Holland's employe. MCI manufactures and sells bio-extruder machines (extruders), which make pressed logs from sawdust and other wood material. Defendant Smith is MCI's president and principal stockholder.

In August and September, 1981, Holland and MCI

---

[1] The only issue on which the court held that Holland was not entitled to judgment was Holland's sixth claim for relief, for interference with prospective business advantage, which the court dismissed for failure to state a claim. Holland does not challenge that ruling.

entered into two agreements. The first, a distribution agreement, gave Holland an exclusive licence to sell and lease the extruders in certain parts of Canada for ten years. It also provided that Holland could not manufacture MCI's extruders and could not sell or lease competing products. The second, a purchase agreement, provided that Holland would purchase two MCI extruders for $90,000.

In November, 1981, MCI delivered two extruders to Holland, and in June, 1982, MCI completed their installation. Holland had purchased the extruders in reliance on MCI's representations that each of the machines could produce up to 2,000 pounds of pressed logs per hour of operation. However, the extruders failed to work properly or consistently.

Over the next seventeen months, Holland and MCI tried to solve the problem. During that period MCI referred several prospective extruder buyers to Holland. Because Holland's extruders did not work properly, no sales were made. During October and November, 1983, Holland attempted without success to settle its claim against MCI. Relations between Heineman, Holland's president, and Smith became strained. On November 5, 1983, Heineman ordered Smith to leave Holland's plant, and he barred MCI personnel from Holland's property. The trial court found that Holland reasonably believed that MCI would not be able to repair the extruders.

From November, 1983, until spring, 1984, Holland's employes worked independently in an attempt to make the extruders work. They experimented with designs and spent hundreds of hours and more than $100,000 before achieving a workable machine.

In February, 1984, Holland hired Billwiller as an extruder operator. There was no written employment contract. He had been working for Leisure Flame, a company that also manufactured pressed logs. The trial court found that he had no technical responsibility for, or familiarity with, Leisure Flame's extruders while he worked there and that he brought no relevant technology or special skills to Holland. The court also found that he did not contribute any of the significant changes needed to fix Holland's extruders.

In March, 1984, MCI learned that Holland had made

some improvements in the extruders. It tried to negotiate a new agreement with Holland and hoped to acquire Holland's extruder technology. In April, 1984, Holland hired Mulligan. He had had substantial experience with extruders and had worked for another company that sold them. Mulligan provided the expertise and improvements needed to achieve sustained extruder production.

Holland agreed to give MCI its technology if MCI would extend Holland's distribution agreement for 20 years, pay Holland $100,000, pay royalties on new extruder sales and provide Holland with certain equipment without charge. In April, 1984, before MCI responded to Holland's offer, Billwiller approached MCI and told it that he had fixed Holland's extruders. He offered to tell MCI how to fix its extruders in exchange for an independent consulting contract. MCI accepted his offer in June, 1984.

Billwiller's contract with MCI provided that he would receive $5,000 in advance, an additional $5,000 for each MCI extruder, up to 20 machines, that he had modified to operate properly and a three-year employment contract at a starting salary of $2,250 monthly. Billwiller continued working for Holland for two months after executing the MCI contract. He took measurements, made sketches and noted the specifications of Holland's extruders. He provided MCI with diagrams and suggestions regarding the changes that Holland had made. The trial court found that MCI abandoned negotiations with Holland when it became apparent that MCI could obtain Holland's technology for less money from Billwiller. Before negotiating with MCI, Billwiller knew about the problem between Holland and MCI and the investment Holland had made in trying to repair MCI's extruders. He also knew about the problems that MCI was having with its other customers. The trial court found that Billwiller knew of Holland's expectations of confidentiality on his part.

Billwiller left Holland in August, 1984. In September, 1984, MCI sent him to fix a malfunctioning extruder in Canada. Using Holland's technology, Billwiller fixed the machine, for which he was paid the salary and $5,000. On the basis of that experience, MCI intended to incorporate Holland's technology in its extruders. Holland then filed this action for injunctive relief and damages.

Defendants first contend that Holland did not have a protectible interest, because there was no confidential relationship between Holland and Billwiller. They argue that Holland's new extruder technology came from Billwiller's own knowledge or from sources outside Holland and, thus, was not Holland's trade secret. Holland argues that there was a confidential relationship between it and Billwiller of which he was aware. It also argues that the trial court found that he did not contribute significantly to the new extruder technology and that most of the new technology was the work of Mulligan.

■ To prove a protectible trade secret, a plaintiff must show that (1) the design is commercially valuable, (2) a confidential relationship existed between the party claiming trade secret protection and the party disclosing the information and (3) the critical features of the design were principally the product of creative efforts by the party seeking protection. *Prentice Dryer v. Northwest Dryer,* 246 Or 78, 81-83, 424 P2d 227 (1967). Defendants do not argue that Holland's new technology is not commercially valuable. They only argue that there was no written employment contract between Holland and Billwiller and, because confidentiality was not a condition of his employment, there was no expectation of confidentiality.

■ The trial court found that Billwiller was aware of the negotiations between Holland and MCI:

> "[C]ertainly Billwiller was aware of Holland's expectation of confidentiality on his part. * * * Billwiller knew that this information was confidential and that it comprised trade secrets of [Holland], knew that plaintiff Holland wanted this information not to be revealed to others outside the company, and knew that it was a valuable commercial asset of the company, and knew that Holland had expended much time, effort and money in developing such confidential and trade secret information. * * * Factually, I have found Billwiller's role in developing the Holland modifications was an operational role, simply implementing ideas originated by others. Billwiller's role was very similar to that of [the defendant] in *Kamin v. Kuhnau [et al,* 232 Or 139, 152, 374 P2d 912 (1962)]. He had none of the technical expertise or design responsibility that [the defendant] had in the *Prentice Dryer* case."

There is competent evidence in the record to support those

findings, and we are bound by them. *Illingworth v. Bushong,* 297 Or 675, 694, 688 P2d 379 (1984); *Hall v. Gordon,* 284 Or 49, 51, 584 P2d 1374 (1978). Further,

> "[I]t is not necessary to show that the defendant expressly agreed not to use the plaintiff's information; the agreement may be implied. And the implication may be made not simply as a product of the quest for the intention of the parties but as a legal conclusion recognizing the need for ethical practices in the real world." *Kamin v. Kuhnau et al, supra,* 232 Or at 152. (Footnotes omitted.)

In *Kamin,* the plaintiff had developed a hydraulic compressor for garbage trucks. The defendant had been hired to provide labor and materials for that development but later began producing his own garbage trucks with compressors. The Supreme Court stated that the defendant must have been aware that the plaintiff was attempting to produce a marketable compressor and that it did not intend that the defendant should have the benefit of the plaintiff's time and expense once the project was successful. The same is true in this case. Surely Holland did not invest time and money in improving the extruders so that Billwiller could use the technology for his own or MCI's benefit.

Defendants also contend that the critical features of Holland's new technology were not a result of Holland's efforts. They argue that some of the improvements were the result of Billwiller's work and others the result of suggestions from people outside Holland and are not Holland's trade secrets. *See Prentice Dryer v. Northwest Dryer, supra,* 246 Or at 81-82. The trial court found that Billwiller brought no technology or special skills from his former employer and that, while employed by Holland, he did not make any changes significant for improving the extruders. Those findings are also supported by competent evidence in the record, and we are bound by them. Further, even if others outside Holland made suggestions, that does not make those suggestions part of the public domain. *See Kamin v. Kuhnau et al, supra. Prentice Dryer* is distinguishable. In that case, the Supreme Court held that there was substantial evidence supporting the trial court's finding that the improvements in the plaintiff's machine were principally due to the defendant. We conclude that the trial court did not err in finding that Holland's

improvements were the result of Holland's efforts or in holding that Holland had a protectible trade secret.

Defendants next contend that the trial court erred in awarding damages and an injunction for the misappropriation of trade secrets because, even if Holland had a protectible trade secret, defendants have a valid defense based on MCI's distribution agreement. They argue that the distribution agreement prevents Holland from making any claim for damages, because Holland was forbidden from competing with MCI during the term of the agreement and for twenty-four months after its termination, and that Holland was required to keep secret any information it had about MCI's extruders and return it to MCI at the end of the agreement. Thus, they argue, MCI could not have unfairly competed with Holland or taken profits from it, because it had no right to manufacture or to sell extruders. Holland argues that MCI breached the parties' distribution agreement by failing to provide working extruders and that, therefore, MCI could not assert that agreement as a defense to tort liability.

■■■■■ The trial court concluded, in part:

"My analysis relates to the contract law of conditions. Generally a condition is an act or event which must occur before a duty under an existing contract becomes absolute. * * *.

"Here MCI promised to supply Holland bio mass extruders. This must be interpreted as a promise to supply a marketable bio mass extruder. That is, one capable of sustained production of merchantable logs.

"* * * I have found that MCI failed to perform that promise. In return for those promises [sic], Holland agreed to market MCI's machines. Holland also agreed not to manufacture machines itself, not to sell machines of another, nor to compete for a period after termination of the agreement and other restrictions. MCI's promise to supply Holland a marketable bio mass extruder was also an implied condition precedent to all of Holland's obligations under the distribution agreement. MCI being unable to supply a marketable bio mass extruder, as I have found factually, relieves Holland of all of its obligations under the distribution agreement and at the same time allows Holland to sue for damages."

Defendants argue that the court erred in applying the contract

law of conditions, because that law only applies to enforcement of a contract and not to asserting the contract as a defense. Generally, a party that seeks to recover under the terms of an express contract for the failure of another to perform its terms must plead and prove his own substantial performace or a valid excuse for his failure to perform. Also, generally, a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty. *See Wasserburger v. Amer. Sci. Chem.,* 267 Or 77, 82, 514 P2d 1097 (1973); *Huszar v. Certified Realty Co.,* 266 Or 614, 620, 512 P2d 982 (1973). Although MCI did not sue to enforce the distribution agreement, it sought to assert the agreement as a defense to its tort liability. In order to assert a contract as a defense to a tort action, the contract must be enforceable by the party seeking to assert it.

Defendants contend that it was the sales agreement and not the distribution agreement that was breached by MCI's failure to provide working machines. A breach of contract occurs if the failure of one party to perform "goes to the very substance of the contract and defeats the object of the parties in entering into the contract." *Bisio v. Madenwald,* 33 Or App 325, 331, 576 P2d 801, *rev den* 283 Or 1 (1978). Clearly, Holland would not have entered into the distribution agreement unless MCI could provide usable machines. The requirement to provide usable extruders was an implied condition precedent to Holland's obligations. Although MCI's inability to provide usable extruders may have been a material breach of the sales agreement, it also was a material breach of the distribution agreement. Because it breached the distribution agreement, MCI could not have enforced it. *See Wasserburger v. Amer. Sci. Chem., supra; Huzar v. Certified Realty Co., supra.* Therefore, defendants may not assert the distribution agreement as a defense to tort liability in this case.

■ MCI contends that, even if it did misappropriate Holland's trade secret, the trial court erred in granting the injunction, because Holland failed to show an injury to its rights that would result in substantial damage. In order to establish a right to injunctive relief,

> "a plaintiff must establish that the rights in respect of which such relief is sought are of the character which equity will

protect, and that the threatened or actual invasion thereof of which he complains is or will be an injurious invasion of such rights which will result in actual and substantial damage." *Biesell, et ux v. Wood, et ux,* 182 Or 66, 185 P2d 570 (1947) (quoting 28 Am Jur, Injunctions, § 28).

Holland has proven a misappropriation of a valuable trade secret. That is an injury that equity will protect. *See Kamin v. Kuhnau et al, supra.* Continued use and disclosure of that trade secret would cause Holland pecuniary loss. The court did not err in granting an injunction.

■ MCI contends that the trial court erred in dismissing its counterclaims for breach of contract and for attorney fees. MCI materially breached the distribution agreement and could not sue to enforce it. The court did not err in dismissing the counterclaims and MCI's claim for attorney fees.

MCI also contends that the trial court erred in dismissing its counterclaim for misappropriation of trade secrets. Even if MCI could rely on the distribution agreement to define the scope of a confidential relationship with Holland or Holland's duties with respect to information provided by MCI, MCI failed to demonstrate that Holland misappropriated any commercially valuable trade secrets. The fact that MCI extruders did not work indicates just the opposite. *See Kamin v. Kahnau et al, supra.* The court did not err in dismissing MCI's counterclaim for misappropriation of trade secrets.

■ All three defendants contend that the trial court erred in dismissing their counterclaims for attorneys fees. *See* ORS 20.105(1).[2] They argue that, given the parties relationship and defendants' expectation of confidentiality, Holland acted in bad faith in bringing this action. We conclude that Holland did not act in bad faith. Therefore, the court did

---

[2] ORS 20.105(1) provides:

"In any civil action, suit or other proceeding in a district court, a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court may, in its discretion, award reasonable attorney fees appropriate in the circumstances to a party against whom a claim, defense or ground for appeal of review is asserted, if the party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party wilfully disobeyed a court order or acted in bad faith, wantonly or solely for oppressive reasons."

not err in dismissing defendants' counterclaims.

 MCI finally contends that the trial court erred in awarding Holland attorney fees for defending against the counterclaim for breach of contract. It argues that, because the court's conclusions were based on its holding that the contract was unenforceable, an award of attorney fees based on that contract was impermissible. The court did not hold that the contract was invalid; it merely held that MCI could not enforce it. When a contract provides for a reasonable attorney fee in an action to enforce it, the opposing party is entitled to a fee for successfully defending against that action. *See Secolo Realty v. Dunnigan,* 36 Or App 11, 14, 583 P2d 1154, *rev den* 284 Or 235 (1978). We find no error.

Affirmed.