Argued and submitted February 22, affirmed June 6, reconsideration denied July 13, petition for review denied September 9, 1984 (298 Or 37)

# JACK JACOBS, INC.,
*Respondent,*

*v.*

# ALLIED SYSTEMS COMPANY et al,
*Appellants,*
## JACOBS et al,
*Respondents.*

(40-497, 41-413; CA A27230)

683 P2d 1011

Arden E. Shenker, Portland, argued the cause for appellants. With him on the briefs were Elizabeth A. Trainor, Montgomery W. Cobb, and Tooze Kerr Marshall & Shenker, Portland.

Donald R. Stark, Portland, argued the cause for respondents. With him on the brief were Barry L. Adamson, Michael D. Williams, and Williams, Stark, Hiefield and Norville, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendants[1] design and manufacture marine cranes. Plaintiff[2] was the exclusive distributor of the cranes in the United States and Canada. Under the terms of the exclusive distributorship agreement, plaintiff was required to "purchase and pay for" 4.5 million dollars in "minimum net dollar sales" in calendar year 1979, the first year of that agreement. If plaintiff failed to meet the minimum sales requirement, defendants could terminate the agreement on 60-days written notice "if the distributor does not make up the deficiency within such 60 day period."

A termination notice, dated November 5, 1979, warned that the agreement would be terminated in 60 days (on January 5, 1980), unless plaintiff purchased and paid for 4.5 million dollars of defendants' products by December 31, 1979. Subsequently, plaintiff brought an action asking for a declaratory judgment that it had met the 1979 minimum sales requirement, that defendants' termination notice was ineffective and void for being premature and that defendants had breached the distributorship agreement.

After trial on the declaratory judgment, but before judgment was entered, plaintiff filed an action for damages, including lost profits, unpaid commissions for purchase orders submitted on December 29, 1979, and other amounts due under the contract. Defendants counterclaimed, alleging fraud in connection with purchase orders submitted on December 29, breach of the distributorship agreement by plaintiff and negligent performance of the agreement, praying for judgment against plaintiff for lost profits and the recovery of commissions it had paid on part of the December 29 orders. After further proceedings, the trial court found that defendants had breached the agreement by failing to manufacture some ordered items promptly and by refusing to accept other purchase orders. It determined that, but for the breach,

---

[1] We refer to Allied Systems Company and Marine Crane, Inc., as "defendants" throughout this opinion. Marine Crane, Inc., is a wholly owned subsidiary of Allied Systems Company.

[2] We refer to Jack Jacobs, Inc., and its principals as "plaintiff" throughout this opinion. The principals, John Jacobs and Roy Weber, were joined as individual defendants on the counterclaim filed by Allied Systems Company and Marine Crane, Inc.

plaintiff would have generated at least $5,328,792 in total orders and sales during 1979. That figure included purchase orders not filled by defendants due to manufacturing delays, purchase orders defendants refused to accept because they believed that plaintiff's customer was competing with defendants and purchase orders submitted on December 29, 1979, but not paid for during that calendar year.[3] Defendants appeal, and we affirm.

The first of defendants' eight assignments of error is that the trial court erred in construing the minimum sales requirement provision of the distributorship agreement. They contend that the agreement unambiguously requires plaintiff to pay for $4.5 million dollars in net minimum sales during the calendar year 1979 and that plaintiff failed to do so. We disagree.

Neither party contends that a purchase order placed after December 31, 1979, would count toward meeting the 1979 minimum sales requirement. Thus the question is whether orders placed on or before December 31, 1979, but paid for after that date, count toward the 1979 minimum sales requirement, notwithstanding the contractual language that sales must be "purchased and paid for" during 1979. The contract expressly provides that plaintiff would have 60 days to cure in the event defendants were to seek to terminate the contract for failure to meet the minimum sales requirement. That 60-day cure period could commence running only after December 31, 1979, for it would only be then, short of anticipatory breach by plaintiff, that defendants would be able to determine that sales for 1979 were deficient. If, as seems to be agreed, purchase orders could not be submitted during the 1980 cure period, the only way plaintiff could cure would be to submit payment on outstanding 1979 orders during 1980.

■     It is, therefore, apparent from reading the contract as a whole that plaintiff could "purchase and pay for" products in 1979 by ordering them in 1979 and paying for them in 1980 pursuant to the 60-day cure provision of the contract. Although this interpretation is suggested simply by reading the contract, it is also consistent with evidence admitted at

---

[3] After trial on the damage case, the cases were consolidated and a single judgment entered. It is from that judgment that defendants appeal.

trial concerning the parties' course of dealing, ORS 71.2050, that defendants were not paid upon receipt of the purchase orders but ten days after manufacture and delivery of the cranes—a period lasting between 60 and 210 days from the date of order. We conclude that the trial court correctly interpreted the contract. Accordingly, defendants' first assignment of error fails.

■■ Defendants next contend[4] that the trial court erred in finding that manufacturing delays and order cancellations excused plaintiff's performance of the distributorship agreement. Defendants concede that there were "minor" manufacturing delays but place the blame for the order cancellations on plaintiff and fail to mention their own refusal to accept purchase orders from the customer that they believed was competing with them. It is, of course, a well settled rule in this state that when one party's breach prevents the performance of a contract by the other party, the breaching party may not assert that nonperformance to avoid liability on the contract. *See, e.g., Anderson v. Allison,* 256 Or 116, 121, 471 P2d 772 (1970). The trier of fact found that defendants had breached the contract. Defendants did not challenge the sufficiency of the evidence to support that finding below, and we will not consider that challenge now. *Falk v. Amsberry,* 290 Or 839, 626 P2d 362 (1981).

■ Defendants assign error to the trial court's allowing plaintiff to recover on its claim for lost profits. Plaintiff's complaint prayed for $104,700. The trial court awarded $88,770. When an award for lost profits is challenged on appeal, our task is to determine whether the evidence before the trier of fact was sufficient to establish in the mind of a reasonable person that a loss of profit probably occurred. The claim should be withdrawn from the trier of fact only when the evidence is "clearly insufficient" to persuade reasonable persons of the validity of the claim. *See Welch v. U.S. Bancorp,* 286 Or 673, 704-05, 596 P2d 947 (1979). The trial court based its award on testimony regarding plaintiff's advertising and distributorship efforts, its income and expense projections and defendants' manufacturing capabilities. The court also

---

[4] Defendants concede that their second assignment of error was not properly preserved, and so we do not consider it.

considered documentary evidence, including plaintiff's operating budget, sales and expense accounts and the income tax return for the period plaintiff performed under the distributorship agreement.

■ Defendants contend that that evidence consists of speculative, subjective opinion "unsupported by a single fact." That contention is not supported by the record. In addition to plaintiff's testimony regarding income and expense projections, the trial court reviewed supporting data in the form of sales, expense and income figures for the period during which the agreement was performed. We find no basis for concluding that the evidence, taken as a whole, is clearly insufficient to establish plaintiff's claim for lost profits.

■ ■ Defendants further contend that plaintiff was required to mitigate its damages and that the award for lost profits should reflect the fact that plaintiff failed to do so. Defendants recognize that the burden was on them to show that mitigation was possible, *Kulm v. Coast-to-Coast Stores,* 248 Or 436, 440, 432 P2d 1006 (1967), and assert that they met that burden. Although defendants point to evidence in the record that plaintiff went out of business in 1980, no reference is made to any evidence demonstrating that mitigation was possible under the circumstances of this case. We decline to search the record for that evidence. *State v. Mendenhall,* 53 Or App 174, 631 P2d 791 (1981).

■ Defendants also assign error to the trial court's denial of their motion to strike the testimony of one of plaintiff's principals that, in his opinion, sales in 1980 would have reached five to six million dollars. Defendants objected on the ground that the records upon which that opinion was based were not present in the courtroom. The testimony was not, as defendants contend, a summary of the contents of a voluminous writing, OEC 1006, or other evidence of the content of a writing. OEC 1004. Although the projection of future sales was partly based on the witness' examination of various records, it does not follow that his testimony was evidence of the contents of the records on which the projection was based. The testimony went to identifying the basis for his opinion, not to establishing the existence, content or accuracy of the records identified as its basis. There was no objection to the testimony on the ground that it was inadmissible opinion

evidence or that it was based on hearsay. The trial court did not err in denying defendants' motion to strike.

■ Defendants contend that the trial court erred in denying their motion to dismiss plaintiff's claim for commissions on the orders of December 29. The motion was made on the theory that there was insufficient evidence to support that claim. There was evidence that the customer for the cranes ordered on December 29 was procured through plaintiff's efforts and that the sale was ultimately consummated, albeit on terms substantially different from those contained in the purchase orders. However, the trial court found that the variance between the terms contained in the purchase orders and the terms upon which the deal was finally consummated was not plaintiff's fault, but defendants'. The trial court's findings in this regard are supported by competent evidence, and we are bound by them.

Defendants' final assignments of error are that the trial court erred in granting plaintiff's motion to dismiss defendants' counterclaim based on fraud, negligent performance of the distributorship agreement and breach of contract, all in connection with the December 29 orders. In the light of the trial court's findings regarding those orders, these assignments of error do not require further discussion.

Affirmed.