892 F.2d 83
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Reis LEMING, Plaintiff-Appellee,
v.
US WEST INFORMATION SYSTEMS, INC., a Colorado corporation;
Norman G. Curtright, together doing business in the State of
Oregon as FirsTel Information System, Inc., and; Cliff
Thompson, also doing business as U.S. West Information
Systems, Defendants-Appellants.
 Nos. 87-4056, 87-4427.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 16, 1988.
Decided Dec. 11, 1989.
 
 Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 This is an appeal from a judgment in favor of Reis Leming, the plaintiff, after a court trial. Leming brought an action for conversion, lost profits, unpaid commissions, penalty wages, punitive damages, and attorney fees against his former employer, US West Information Systems and a supervisor (collectively, "US West"). The district court held that US West converted the plaintiff's personal property and awarded the plaintiff damages for lost profits, unpaid commissions, penalty wages, and attorney fees. We affirm.
 
 DISCUSSION
 I. Conversion of the lead files
 
 3
 Leming claims that US West took approximately one hundred lead files from his desk when his employment was terminated and that those files were not produced at trial. US West claims all retained files were produced at trial. There is no dispute that the files produced at trial consist, with one exception, of files on US West's existing customers to which Leming claims no proprietary right.
 
 
 4
 On appeal, US West contends the district court did not find that US West took any documents beyond those produced at trial. In the alternative, US West argues that if the court did find that additional documents were taken but not produced at trial, this finding is clearly erroneous. Finally, US West argues that even if additional documents concerning potential customers were taken but not produced at trial, those documents were the property of US West.
 
 
 5
 We are satisfied the district court impliedly found that Leming was deprived of lead files which US West never produced at trial. This conclusion follows from the court's findings that Leming actually developed and had a proprietary right in the lead files, since the files presented at trial did not include any files in which Leming had any proprietary interest.
 
 
 6
 We disagree with US West that the finding is erroneous, given the testimony of Clifford Thompson and Kenneth Wilkins that the files produced at trial included all the files taken from Leming's office. Leming testified to the contrary and the district court found Leming's testimony credible. Wilkins only testified that the files contained in the box produced at trial "appeared" to be "approximately" the same number of files as were taken from Leming's desk, and that "if everything that was supposed to be there [in the box], I would assume it's there." Thompson did testify that all the removed files were produced at trial. However, giving due regard to the district judge's credibility determinations, we cannot say that it was "clearly erroneous" for the district court to come to the opposite conclusion.
 
 
 7
 We also reject US West's contention that US West, not Leming, held the only proprietary interest in Leming's lead files. We have recognized that Oregon law protects employers from competition by former employees who use customer lists prepared by the employer. American Republic Ins. Co. v. Union Fidelity Life Ins. Co., 470 F.2d 820, 825 (9th Cir.1972) (citing Port Investment Co. v. Oregon Mut. Fire Ins. Co., 163 Or. 1, 94 P.2d 734 (1939)). However, lacking supporting authority, we see no reason to extend that protection to cases such as this one, where the employee, not the employer, developed the lists of potential customers on his own initiative and by his own methods. See also Kelite Products Inc. v. Brandt, 206 Or. 636, 655-56, 294 P.2d 320, 329 (1956) (generally, absent contractual restrictions, a former employee "is not guilty of unfair competition in selling to customers of his former employer if the names and places of business of such customers are retained in his own memory or are not taken from private and secret lists furnished him by his former employer.") (emphasis added).
 
 
 8
 Moreover, Leming's lead lists were not a trade secret. Rather, they consisted of information accessible to anyone in the industry, if not the general public, regarding business organizations, new or moving businesses, buildings under construction, etc. Nor was any information regarding leads provided to Leming by US West in a confidential manner. Cf. Kamin v. Kuhnau, 232 Or. 139, 374 P.2d 912 (1962) (court found special truck design confidentially disclosed was a trade secret).
 
 
 9
 The facts of this case and Oregon case law support the district court's conclusion that Leming had a proprietary interest in the lead files because he developed them using his own methods, on his own initiative, and they were not generated by his employer or provided to him in a confidential manner. Thus, by retaining the lead lists, US West wrongfully converted Leming's personal property.
 
 II. Damages for Conversion
 
 10
 Oregon has recognized that in some circumstances lost profits are appropriate damages for conversion. Preble v. Hanna, 117 Or. 306, 315-17, 244 P. 75, 77-78 (1926); see also, VonRavensberg v. Houck-Carrow Corp., 60 Or.App. 412, 417, 653 P.2d 1297, 1299 (1982) ("lost profits are also recoverable in tort actions"). Because Leming could not replace his lead list, the district court awarded him the net profits the list would have generated during the one year he remained in the telecommunications business.
 
 
 11
 Leming sought $90,632 in lost profits based on the assumption that his income was increasing at a yearly rate of approximately 30%. The district court awarded $19,250. The district court determined that Leming's overall income during the time he worked at his new job would have dropped by 25% because he was starting a new job and his own testimony demonstrated that the market was becoming saturated. Therefore, the court subtracted 25% from Leming's previous income at US West of $75,000 to come up with $56,250. The court then awarded Leming the difference between his income at his new job of $37,000 and the $56,250.
 
 
 12
 An award of lost profits is reviewed to determine if sufficient evidence was presented to establish in the mind of a reasonable person that a loss probably occurred. Jack Jacobs, Inc. v. Allied Sys. Co., 68 Or.App. 554, 558, 683 P.2d 1011, 1014, rev. denied, 298 Or. 37, 688 P.2d 845 (1984). It is not necessary that the exact amount of lost profits be proved, only that a satisfactory conclusion can be reached from the estimates of witnesses. VanRavensberg v. Houck-Carrow Corp., 60 Or.App. 412, 417, 653 P.2d 1297, 1300 (1982).
 
 
 13
 We are satisfied adequate evidence exists to support the district court's finding that Leming lost profits because of lack of his lead list. Witnesses testified as to the importance of such a list to a salesperson in that industry.
 
 
 14
 Defendant contends, however, that there was insufficient evidence to support the district court's finding that Leming's income would continue to increase at a yearly 30% rate had he kept the lead files. Although Leming's own testimony supports the finding, defendant contends more was needed, relying upon Meader v. Francis Ford, Inc., 286 Or. 451, 458, 595 P.2d 480, 483 (1979). In that case the plaintiff failed to obtain a continuation of his hauling job after his truck broke down. The plaintiff sought lost profits from the defendant whom he alleged had improperly repaired the truck. The Oregon Supreme Court rejected a damages award for lost profits on the ground that the evidence supporting damages in that case was purely speculative. But in that case, there was no evidence that any profits were lost as the result of the breakdown of a truck, because there was no showing a job would continue to be available for which the truck could be used. In this case, the plaintiff found another job and testified that with the lead lists, his income would have continued to increase at the rate of 30 percent. The element of continued employment, missing in Meader, is present here. The plaintiff provided sufficient evidence to support a factual finding that some profits were lost.
 
 III. Commissions
 
 15
 Leming presented detailed evidence concerning twenty accounts on which he claims he was due commissions. Leming argues that, under his employment agreement, he had earned the commissions, and these became payable regardless of whether his employee status with US West was terminated. US West counterargues that Leming is not entitled to the commissions because he was subject to a new policy that required continued employee status to become entitled to earned but unpaid commissions.
 
 
 16
 The evidence clearly supports the district court's finding that Leming refused to be bound by US West's new commission policy, and that Leming was therefore owed $19,209.93. Leming testified that he refused to sign the new policy and that he notified the sales manager of his disagreement with the policy. We see no ground to set aside the district court's finding as clearly erroneous. US West cites Albrant v. Sterling Furniture Co., 85 Or.App. 272, 736 P.2d 201, rev. denied, 304 Or. 55, 742 P.2d 1186 (1987) to argue that, as a matter of law, the fact that Leming continued to work after refusing to sign the new policy constitutes an implied acceptance of the new policy. In Albrant there was no evidence that the employee plaintiff objected to the modification, whereas Leming objected here. Albrant does not apply.
 
 
 17
 We affirm the district court award of $19,209.93 for unpaid commissions.
 
 
 18
 The district court also found that Leming earned a special commission for the Unisource sale. This factual finding is not clearly erroneous. The evidence is uncontroverted that Leming was instrumental in US West's sale of a telephone system to the Portland, Seattle, and other offices of Unisource. Both Leming and Thompson testified that when a customer's offices extend over more than one sales territory, the commission is subject to negotiation, as was the Unisource account. Thus, the Unisource commission was not subject to whatever commission policy US West may have otherwise applied at that time. Only Leming presented testimony as to what commission he negotiated with US West on the Unisource account. Therefore, the district court was not clearly erroneous in awarding Leming the commission he claims was due: $9,315.00, representing a full commission on the sale to Unisource's Portland office and a half commission on the sale to the Seattle office.
 
 IV. Attorney Fees
 
 19
 This court reviews an award of attorney fees by the district court for an abuse of discretion. Beaudry Motor Co. v. ABKO Properties, Inc., 780 F.2d 751, 756 (9th Cir.), cert. denied, 479 U.S. 825 (1986). In diversity actions, federal courts must follow state law as to an award of attorney fees. United States v. City of Twin Falls, 806 F.2d 862, 879 (9th Cir.1986), cert. denied, 482 U.S. 914 (1987). In Oregon, attorney fees are allowable if provided for by statute or contract. Hollopeter v. Oregon Mutual Ins. Co., 255 Or. 73, 75, 464 P.2d 316, 317 (1970). Oregon Revised Statute § 652.200(2) (1987) provides that in a suit for unpaid wages, a court "shall," upon judgment for the plaintiff, award reasonable attorney fees.
 
 
 20
 Because Leming prevailed, he is entitled to attorney fees incurred pursuing his unpaid wages, or commissions, claim. Leming's attorney submitted an affidavit in which he claimed total attorney fees of $17,732.64 for 213 1/2 hours of work. Of this, he claimed 60% of the time, or $10,639.58, was devoted to the commission issue. The defendants objected to the 60% figure, a mediator recommended that the plaintiff receive $9,250.00 in attorney fees, which the court accepted and ordered.
 
 
 21
 On appeal, US West continues to object to the 60% figure. It argues that given the large amount Leming sought for the conversion claim compared to the commission claim, the conversion claim was the more serious claim. It argues the exhibits and affidavits demonstrate that most of Leming's attorney's time was spent on the conversion claim.
 
 
 22
 We disagree. The conversion claim did not require a detailed examination of the files, but only a review to see if they contained any lead files. In contrast, the unpaid commissions claim required a thorough analysis of each file to determine whether Leming was due a commission and if so, how much. There is no basis for this court to find that the district court abused its discretion in awarding Leming attorney fees of $9,250.00.
 
 
 23
 AFFIRMED.
 
 LEAVY, Circuit Judge, dissenting, in part:
 
 24
 I concur in all parts of the memorandum disposition with the exception of Part II concerning damages for conversion. The lost income which the district court attributed to the conversion is for the period May 1985 to June 1986. The district court rejected plaintiff's testimony to the effect that his income would have increased even with his job change. It found, with no evidence from any source, that the job change would have caused a decrease of income of 25%. The plaintiff explains his departure from the industry thirteen months after he left the employment of the defendant as follows:
 
 
 25
 I left the industry because the severe competition in the industry, plus the market in Portland, Oregon, had shrunk to a point where there were not many businesses or industries who had already have made a decision and had purchased their telephone systems from one of the many companies selling equipment.
 
 
 26
 I would hold that the evidence does not support a finding of $19,250 in damages for lost income nor any other sum whatsoever.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3